ANTONIO MORALES MERCED, peticionario y recurrente, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE SAN JUAN, HON. MANUEL A. MOREDA, JUEZ y JUNTA HÍPICA DE PUERTO RICO, demandados y recurridos.

*Número:* CE-64-27          *Resuelto:* 30 de marzo de 1966

*José Aulet,* abogado del peticionario; *Germán Rieckehoff* y *Elí B. Arroyo,* abogados de la Junta Hípica de Puerto Rico.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Hernández Matos, Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ MATOS emitió la opinión del Tribunal.

La única cuestión planteada en este recurso es si el delito grave de portar un arma de fuego cargada, definido por el Art. 8 de la Ley de Armas, es uno que implica depravación moral.

La "Ley Hípica de Puerto Rico"—Núm. 149 de 22 de julio de 1960—en el número 2 de su Art. 7 concede ciertas facultades al Administrador Hípico, entre ellas, la de otorgar, suspender o cancelar las licencias de dueños de caballos, jinetes, entrenadores y cuadreros. Su ejercicio se condiciona en ese mismo apartado 2, del siguiente modo:

"El Administrador Hípico no concederá licencia alguna a personas que hubiesen sido convictas por tráfico, posesión o uso de drogas narcóticas o por cualquier delito felony que implique depravación moral." [1]

El 22 de abril de 1962, el jinete profesional Antonio Morales Merced, en un sitio público de Río Piedras, con un arma de fuego corta, [2] hizo un disparo contra su novia Gladys Martínez Nieves, causándole una herida grave; hizo otro contra Carmen Delia Martínez Nieves, hermana de Gladys, sin lograr herirla.

Con motivo de esos hechos Morales Merced fue acusado finalmente ante la Sala de San Juan del Tribunal Superior de: (1) acometimiento y agresión grave; (2) acometimiento grave; (3) infracción leve al Art. 6 de la Ley de Armas de Puerto Rico—tener en su posesión un arma de fuego sin haber obtenido previamente una licencia—(4) infracción al Art. 32, inciso (b) de esa Ley de Armas—"intencionalmente, aunque sin malicia," apuntar hacia alguna persona con cualquier arma de fuego—y (5) de una infracción al Art. 8 de esa ley, consistente en "portar una pistola cargada con balas, sin tener una licencia al efecto expedida para portar armas por el Tribunal Superior . . . ni por el Jefe de la policía de Puerto Rico . . .". En esta última acusación se trata de un delito grave (*felony*).

---

[1] Conforme al Reglamento Hípico aprobado en 23 de febrero de 1962, no se otorgarán o renovarán esas licencias a ninguna persona que

"(1)  .  .  .  .  .  .  .  .

"(2)  .  .  .  .  .  .  .  .

"(3) Tenga una reputación desfavorable en la comunidad con relación a sus condiciones morales.

"(4) Haya sido convicta de delito (felony) que implique depravación moral. 15 R.&R.P.R. 186–225."

El Administrador también podrá denegarlas "si, a su juicio y criterio, el temperamento, reputación, experiencia y habilidad del solicitante no amerita la concesión de tal licencia o ello pueda resultar en detrimento del deporte hípico o del interés público." 15 R.&R.P.R. 186–224.

[2] De las cinco acusaciones tres describen al arma usada como una pistola; las otras dos como un revólver.

El 22 de enero de 1963, Morales Merced voluntariamente aceptó su culpabilidad en todos los delitos que se le atribuyeron y, consecuentemente, el Tribunal lo declaró culpable y convicto de los cuatro primeros delitos menos grave y también del delito grave por infracción al Art. 8 de la Ley de Armas.

Pasaron las causas al Oficial Probatorio para su estudio e informe. Éste rindió un informe favorable a Morales Merced. En 20 de agosto de 1963, en el caso grave fue sentenciado a cumplir una pena indeterminada de uno a tres años de presidio. En los cuatro casos menos graves se dictaron sentencias a cumplirse concurrentemente con la dictada en el caso grave. En la misma fecha, visto ese informe favorable, el Tribunal Superior ordenó la suspensión de las sentencias, comenzando el sentenciado un período de libertad a prueba bajo las disposiciones de las Leyes Núms. 259 de 1946 y 177 de 1949.

En diciembre de 1963 Morales Merced solicitó del Administrador Hípico la renovación para el año 1964 de su licencia de jinete. El 16 de ese mes dicho funcionario le ordenó comparecer ante él para que mostrara causa para que no se denegara su solicitud de renovación. La orden para la demostración de causa se fundaba en los siguientes supuestos:

"POR CUANTO: El señor Antonio Morales Merced ha solicitado la renovación de su licencia de jinete para el año 1964;

"POR CUANTO: El señor Antonio Morales Merced ha sido convicto de delitos que conllevan depravación moral, según sentencias dictadas en 20 de agosto de 1963 por el Tribunal Superior. Sala de San Juan;

"POR CUANTO: El temperamento y reputación del señor Antonio Morales Merced no ameritan la concesión de una licencia de jinete;

"POR CUANTO: La concesión de licencia de jinete al señor Antonio Morales Merced es contrario al mejor interés público y resultaría en detrimento del deporte hípico;

"Por Cuanto: El señor Antonio Morales Merced está impedido en derecho de poseer licencia de jinete; . . . ."

Se celebró una vista el 30 de enero de 1964 en torno a esa mostración de causa. Un abogado, como asesor legal del propio Administrador Hípico, ofreció, como única prueba contra la renovación, copias certificadas de las sentencias dictadas en los mencionados casos. El letrado de Morales Merced ofreció presentar en apoyo de la solicitud de renovación "un informe del Oficial Probatorio y un memorando." (³)

---

(³) El llamado informe se presentó el 24 de marzo siguiente y consiste de una carta que dice así:

"ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
SALA DE SAN JUAN

13 de marzo de 1964

"Sr. Agustín Mercado Reverón
Administrador Hípico
Administración de Deportes Hípicos
Río Piedras, Puerto Rico

Re: Antonio Morales Merced
S.J. 1513

"Honorable señor:

"El Sr. Antonio Morales Merced nos fue referido para investigación e informe por dos casos de Ataque P/C Asesinato, Reb. a Acometimiento y Agresión Grave (2 casos) e Infracción a los Artículos 6 y 8 de la Ley de Armas, más Infracción al Artículo 32 Inciso B de la referida Ley de Armas.

"Estos delitos fueron cometidos el 22 de abril de 1962, en Río Piedras.

"Con fecha del 20 de agosto de 1963, luego de haberse realizado una investigación, el Tribunal le concedió los beneficios de la Ley de Sentencias Suspendidas. Disfrutará de dichos beneficios por un período de Tres (3) años ocho (8) meses, que expiran el 20 de abril de 1967.

"Al realizarse la investigación se encontró que el Sr. Morales Merced goza de muy buenas amistades en el vecindario donde vive y su conducta es satisfactoria. Fue recomendado favorablemente por la gran mayoría de las personas entrevistadas.

"Se encontró que es la primera ocasión que surge convicto de delito alguno.

"Durante el período probatorio ha respondido favorablemente, ha asistido a sus entrevistas con el Oficial Probatorio y no se ha envuelto en problemas posteriores.

El día 1 de abril de 1964 el Administrador Hípico dictó una orden denegando la renovación por entender "que el jinete Antonio Morales Merced fue convicto con fecha 20 de agosto de 1963 de delito felony que conlleva depravación moral."

Apeló el jinete para ante la Junta Hípica. Ésta confirmó aquella orden, fundada en que "el delito de portar armas en su modalidad grave, es uno que implica depravación moral." De esa resolución se le pidió reconsideración y la denegó de plano.

Oportunamente interpuso Morales Merced recurso de *certiorari* ante la Sala de San Juan del Tribunal Superior para revisar la resolución de la Junta Hípica. Esa Sala se negó de plano a revisarla. Para ello, a solicitud de Morales Merced, libramos un auto de *certiorari*.

Ante nos sostiene, como único señalamiento, que erró el tribunal demandado al denegar la expedición del auto y la Junta Hípica al resolver confirmar la orden del Administrador Hípico fundándose en que el delito grave de que fue convicto implicaba depravación moral.

■ A juicio nuestro, al peticionario le asiste la razón. El delito grave del cual fue convicto no implica depravación moral. Veamos.

El Art. 8 de la Ley de Armas que lo define, dice así:

"Portación o transporte de revólver, etc., y municiones.

"Toda persona que porte, conduzca o transporte cualquier pistola, revólver o cualquier otra arma de fuego cargada, o que porte, conduzca o transporte cualquier pistola, revólver, o cual-

---

"El Sr. Morales Merced permanecerá en libertad a prueba mientras no viole las leyes vigentes en Puerto Rico, las condiciones de su libertad a prueba y mientras su conducta se rija por la moral.

"Sería para nosotros de gran regocijo el que se le concediera la renovación de su licencia.

Respetuosamente,
(Fdo.) *Sonia Carlo Bouet*
Sonia Carlo Bouet
Oficial Prob. Adultos."

quier otra arma de fuego y al mismo tiempo porte, conduzca o transporte municiones que puedan usarse para disparar tal pistola, revólver u otra arma de fuego, sin tener una licencia para portar armas expedida según más adelante se dispone, será culpable de delito grave."

■ Una acusación bajo el transcrito artículo debe alegar, como requisito esencial y para que pueda imputar un delito prima facie, que el acusado no tiene licencia expedida para portar el arma cargada en cuestión. Si no se alega ese elemento integral de delito, la acusación sería fatalmente defectuosa. Lo mismo ocurre cuando se trata de la simple posesión, portación, conducción o transportación de cualquier pistola, revólver u otra arma de fuego descargada y sin que al mismo tiempo se posea, porte, conduzca o transporte municiones que puedan usarse para dispararla. (⁴) De modo que si se tiene licencia expedida en forma de ley, para cada uno de esos actos, la posesión, portación, conducción o transporte del arma de fuego no está prohibida; es un acto legítimamente permitido. Su validez depende del cumplimiento del requisito de la obtención de la licencia.

■ Es cierto que el jinete fue convicto de un delito grave con motivo de aquella portación sin licencia. Pero nuestra Ley Hípica no faculta al Administrador Hípico para negar licencia al solicitante que hubiera sido convicto de cualquier delito grave, como parece haber entendido la Junta Hípica. Lo facultó sólo en relación con "cualquier delito grave que implique depravación moral."

El término "que implique depravación moral" no está definido o explicado en esa ley. Lo encontramos, aunque con ligeros cambios en su expresión, como prueba—*test*—usado en procedimientos disciplinarios establecidos por estatutos reglamentando el ejercicio de profesiones, como la de abogados, 4 L.P.R.A. sec. 735; o la conducta de funcionarios o empleados públicos, 3 L.P.R.A. sec. 556. La Regla 96 (d) de Proce-

---

(⁴)*Pueblo* v. *Rivera*, 73 D.P.R. 440, 444 (1952).

dimiento Criminal, señala condiciones para que una persona pueda ser elegible para actuar como jurado, entre ellas: No haber sido convicto de un delito grave (*felony*) o de cualquier otro delito que envuelva depravación moral.

La depravación moral, tratándose de abogados, consiste, según se resolvió en *In re Disbarment of Coffey*, 123 Cal. 522, en hacer algo contrario a la justicia, la honradez, los buenos principios o la moral, como el delito de extorsión o el de defalco. En *Jordan* v. *De George*, 341 U.S. 223, 229 (1951) se resolvió que todo delito en que el fraude era un ingrediente básico siempre se había considerado que implicaba torpeza moral.

■ En general la consideramos como un estado o condición del individuo, compuesto por una deficiencia inherente de su sentido de la moral y la rectitud; en que la persona ha dejado de preocuparse por el respeto y la seguridad de la vida humana y todo lo que hace es esencialmente malo, doloso, fraudulento, inmoral, vil en su naturaleza y dañino en sus consecuencias.

El Diccionario de la Lengua Española, en su decimaoctava edición, nos dice que la voz "Depravar", significa viciar, adulterar, corromper, y que "Depravadamente", significa malvadamente, con malicia suma.

El Diccionario Terminológico de Ciencias Médicas, 8va. ed. Salvat, Barcelona, define Depravación así: "(de depravarse, viciar). Deterioración, cambio en peor sentido, perversión, especialmente en las sensaciones."

■ Un acto que está permitido y es lícito siempre que se cumpla con cierto requisito de Ley, como lo es la portación de armas cargadas o descargadas, no puede considerarse que implica depravación moral al realizarse sin cumplirse con el requisito de la licencia. Desde luego, debe considerarse ilegal y malo porque está prohibido por ley, no porque sea un acto inherentemente inmoral. Si lo fuera el Derecho positivo jamás lo permitiría en manera alguna.

En el citado caso de *Pueblo* v. *Rivera,* observamos que la vigente Ley de Armas fue inspirada por la ley vigente en el Estado de Nueva York y que los Arts. 7 y 8 de la nuestra se asemejaban a las Secs. 1897(5) y 1897(5.2) del Código Penal de dicho estado, las cuales también contienen la frase "sin una licencia escrita para ello expedida, según se prescribe más adelante." Interpretando esa Sec. 1897, en el caso *Ex Parte Saraceno,* Circuit Court, S.O. New York, 182 Fed. 955, 957 (1910) recurso de hábeas corpus para obtener la libertad de un inmigrante arrestado bajo la ley de inmigración, se resolvió que la convicción del peticionario por infracción a esa Sec. 1897, no era evidencia de que el acusado era una carga pública, ni esa infracción—cometida al transportar un revólver—envolvía torpeza moral. Lo mismo fue resuelto en *United States ex rel., Andreacchi* v. *Curran,* 38 F.2d 498 (1926).

Los hechos que motivaron la acusación y convicción por el delito grave—consistente en la portación del arma de fuego cargada, sin licencia para portarla—eran los pertinentes en la consideración de la solicitud de renovación. Los demás hechos, por referirse a delitos menos graves, estaban por ley excluidos y en nada podían influir.

Para la fecha en que Morales Merced solicitó la renovación, el Tribunal Superior, con arreglo a las citadas leyes de 1946 y 1947, había determinado "que ningún aspecto de la vida de esa persona evidencia que haya necesidad de que se le recluya . . . para que se logre la reforma o rehabilitación . . . como medida de protección adecuada a la comunidad." Por otra parte, la información incontrovertida, suplida al Administrador Hípico por la señora Carlo Bouet en su carta del 13 de marzo de 1964, era evidencia suficiente de la buena conducta del jinete, que probablemente, en un arrebato de cólera disparó contra la novia con la cual después contrajo matrimonio.

Erró el Administrador Hípico al resolver que el jinete Antonio Morales Merced había sido convicto de un delito grave "que conlleva depravación moral"; también erró la Junta Hípica en confirmar tal resolución y, además, erró la Sala de San Juan del Tribunal Superior al denegar la expedición del auto de *certiorari*.

■ Por tratarse de licencias anuales no procede que ordenemos al Administrador Hípico que conceda la renovación de la licencia de jinete del peticionario para el año 1964. Por ese motivo no se ha convertido en abstracto, teórico o académico el presente recurso. La determinación que aquí hacemos al efecto de que la infracción grave del Art. 8 de la Ley de Armas no implica depravación moral carecerá de efectividad respecto a la controversia surgida en el año 1964 con motivo de la solicitud de renovación de licencia que para ese año hizo el peticionario. Sin embargo, esa determinación tiene su impacto inmediato y su utilidad práctica respecto a cualquier solicitud que haga el peticionario al Administrador Hípico para obtener su licencia de jinete para el corriente o para años futuros y respecto al continuo y repetido proceso de conceder o denegar licencias a cientos de personas relacionadas con el deporte hípico que pudieran encontrarse en situación idéntica al peticionario. ([5])

*Se revocarán las resoluciones impugnadas.*

---

(5) Se dice en 2 Am. Jur.2d *Administrative Law*, § 573:

"Un suceso o evento subsiguiente torna una controversia en académica cuando el mismo impida a un tribunal conceder el remedio efectivo, si alguno, a la parte afectada. Pero, sucesos interventores no convierten en académica la controversia cuando sea todavía posible para el tribunal revisor, si decidiera el caso en favor de la parte que solicite el remedio, concederle algún remedio eficaz, y en circunstancias específicas se ha sostenido que no es académica una controversia cuando haya la posibilidad de acción adicional por parte de la agencia administrativa. En algunos casos, el interés de una parte afectada, o el del público, en una adjudicación en los méritos, no empece su inefectividad en relación con la controversia presentada ante el tribunal, ha prevalecido sobre consideraciones técnicas, particularmente cuando están envueltas órdenes administrativas de corto

---

plazo; los tribunales han enfatizado que las cuestiones a decidir son unas de efectos continuos y que el derecho a la revisión judicial no puede ser derrotado por estas órdenes a corto plazo capaces de repetirse, evadiendo sin embargo la revisión."