*In re* JOSÉ H. RIVERA CINTRÓN, querellado.

*Número:* O-80-644    *Resuelto:* 30 de junio de 1983

*Miguel Pagán, Procurador General Interino, y Rosa Negrón, Procuradora General Auxiliar,* abogados de El Pueblo; *Vicente*

*Ortiz Colón*, abogado del querellado; *Telesforo Rosa Resto*, Comisionado Especial.

PER CURIAM: El Comisionado nombrado por este Tribunal formuló las siguientes determinaciones de hecho, que no han sido impugnadas por las partes:

1. El querellado es abogado y notario en la Isla de Puerto Rico desde marzo y abril del año 1963, respectivamente. (T.E., págs. 41 y 42.) Desde entonces ha ejercido como tal continuamente en Puerto Rico en la práctica privada de la profesión. Es casado desde el 30 de agosto de 1950 con la Sra. Isabel Lanausse Roque, en cuyo matrimonio procrearon tres hijos, dos de los cuales son profesionales y casados y una menor nacida en mayo de 1969. (Ver *Exhibit* 31, pág. 5.) Hizo su grado de bachillerato en la Facultad de Administración Comercial, donde luego comenzó a dictar cátedra como conferenciante en la Rama de Seguros desde el 1956. (*Exhibit* 31, pág. 14.) Un poco antes de prestar juramento como abogado, presumiblemente durante el año 1962, cesó como conferenciante en la Universidad de Puerto Rico. (*Exhibit* 31.) Durante todos los años que ha ejercido la profesión de abogado y notario ha tenido sus oficinas en el Edif. Asociación de Maestros, Hato Rey. (T.E., pág. 42.) Surge de los membretes de algunos de los documentos sometidos en evidencia que originalmente el querellado practicaba la profesión conjuntamente con los licenciados Manuel J. Medina Aymat y Gladys Iglesias Strong en las oficinas 601 y 602 de dicho Edificio Asociación de Maestros. (*Exhibit* 15.)

2. El querellado fue empleado público desde 1946, pero de 1950 a 1952 sirvió en el Ejército Norteamericano. Hasta el año 1962, el querellado rindió sus planillas de contribución sobre ingresos. (T.E., pág. 118.) Una vez se inició como abogado y notario en el año 1963, inclusive, desde entonces el querellado cesó de rendir planillas de contribución sobre ingresos. (T.E., pág. 118.) A pesar de que el querellado entiende que debió haber rendido planillas para los años 63 y 64, adujo que por diversas razones no lo hizo y que aunque entendía que de haberlas rendido no hubiera tenido que pagar contribuciones, se le fueron acumulando. (*Exhibit* 31, págs. 17 y 18.) De la prueba ofrecida no surgen las razones a las que alude el querellado para no haber rendido dichas pla-

nillas de los años 1963 y 1964. Para dicho año 1964, el querellado se agenció la compra de una finca de 50 cuerdas que antes pertenecía a su suegra y que dedicó al cultivo de caña de azúcar, así como también era dueño de un solar que compró en el año 1957 por el precio de $12,000.00 en el que construyó la casa de familia. (*Exhibit* 31, págs. 36 y 37.) En el año 1963 hizo un refinanciamiento de la casa y solar y comenzó a pagar alrededor de $270.00 mensuales por la hipoteca, amén de otras mejoras que posteriormente y por valor de $3,500.00 le hizo a su residencia. (*Exhibit* 31, pág. 38.) Ya para el 1965 había comprado una lancha en alrededor de $5,000.00 y posteriormente pudo invertir $9,000.00 para la compra de una oficina en el Edificio Metro en Hato Rey, suma que perdió por dificultades que tuviera la dueña de dicho edificio. (*Exhibit* 31, pág. 39.) Desde que comenzó como abogado y notario en 1963, el querellado se ha dedicado casi exclusivamente a la práctica de lo civil y en dicha rama del derecho, fundamentalmente al campo de los daños y perjuicios.

3. El 15 de abril de 1965 el querellado cursó al Departamento de Hacienda una Solicitud de Prórroga de treinta (30) días para radicar su planilla de contribución sobre ingresos correspondiente al año 1964. La razón que adujo para ello fue que no contaba aún con los datos necesarios para la radicación de dicha planilla, específicamente que la Central Aguirre Sugar Company no le había suministrado los datos importantes concernientes al Contrato de Administración sobre la finca de cincuenta (50) cuerdas de caña de dicho querellado. (*Exhibit* 15.)

4. El 27 de octubre de 1965 el Departamento de Hacienda cursó al querellado una comunicación escrita en la que le indica que en los records del Negociado de Contribución sobre Ingresos no aparece que el querellado hubiera rendido planilla de contribución sobre ingresos para el· año 1964 y requiere que el querellado la rinda dentro de diez (10) días. (*Exhibit* 13-A.) El querellado no rindió dicha planilla. El 15 de abril de 1966 el querellado suscribió una Declaración Jurada para solicitar prórroga de treinta (30) días para rendir su planilla correspondiente al año 1965. (*Exhibit* 16.) Dicha prórroga le fue denegada y así le fue notificado el 29 de abril de 1966 por haberse dejado de solicitar la misma antes del 15

de abril de dicho año. (*Exhibit* 17.) El querellado no rindió dicha planilla. El 14 de abril de 1967, en papel timbrado de las oficinas de dicho querellado conjuntamente con los licenciados Medina Aymat e Iglesias Strong, solicitó prórroga de treinta (30) días al Departamento de Hacienda para rendir su planilla correspondiente al año 1966. (*Exhibit* 18.) El 27 de abril de 1967 el Departamento de Hacienda cursó una comunicación escrita al querellado concediendo una prórroga de treinta (30) días para que el querellado rindiera su planilla de contribución sobre ingresos correspondiente al año 1966, a vencer dicha prórroga el 18 de mayo de 1967. (*Exhibit* 13-B.)

5. El querellado no rindió dicha planilla de 1966 y el 4 de septiembre de 1968 la Secretaría de Hacienda cursó una comunicación escrita al querellado pidiéndole que rindiera su planilla correspondiente al año 1965 dentro del término de diez (10) días. (*Exhibit* 13-C.) El 11 de septiembre de 1968 la Secretaría de Hacienda cursó al querellado una comunicación concediéndole 10 días para que rindiera su planilla de contribución sobre ingresos correspondiente al año 1964. (*Exhibit* 13-D.) El querellado no rindió la planilla. El 12 de septiembre de 1968 la Secretaría de Hacienda vuelve a pedirle que dentro de los diez (10) días siguientes rinda su planilla del año 1966, lo cual tampoco hizo. (*Exhibit* 13-E.) El 14 de abril de 1969 el querellado pide prórroga de sesenta (60) días para rendir su planilla correspondiente al año 1968. (*Exhibit* 19.) El 25 de junio de 1970 la Secretaría de Hacienda envía comunicación escrita al querellado dándole diez (10) días para que rinda su planilla correspondiente al año 1965. (*Exhibit* 13-F.) El querellado no rindió su planilla para ese año.

6. El 4 de mayo de 1972 el Departamento de Hacienda le cursó comunicación escrita al querellado indicándole que no había rendido sus planillas para los años 1964 a 1970, inclusive, y concediéndole diez (10) días para que rindiera dichas planillas. (*Exhibit* 13-G.) El 16 de junio de 1972, en esta ocasión en papel con membrete en el que figura solamente el nombre del querellado, la secretaria de éste suscribe una comunicación escrita dirigida al Negociado de Contribución Sobre Ingresos donde por primera vez le indica que el querellado se encuentra convaleciendo en su casa y que tan pronto él regrese al despacho atenderá el asunto. Indica la secretaria

del querellado en dicha comunicación escrita que aquél tiene un disco herniado que ha quebrantado su salud y que el querellado no ha podido atender su bufete durante los últimos siete (7) meses consecutivamente. (*Exhibit* 20.) El 13 de junio de 1972 vuelve la Secretaría de Hacienda a pedirle al querellado que rinda las planillas de contribución sobre ingresos correspondientes a los años 1964 al 1970 y para ello le concede diez (10) días adicionales. (*Exhibit* 14-A.) Sin respuesta del querellado, el 15 de septiembre de 1972 vuelve el Departamento de Hacienda a pedirle al querellado que rinda sus planillas correspondientes a los años 1964 al 1970, ambos inclusive. Para ello le concede al querellado otro término de 10 días. (*Exhibit* 14-B.)

7. El 26 de septiembre de 1972 el querellado escribe a Hacienda para indicarle que la condición de salud sigue siendo la misma que cuando una de sus secretarias se dirigió al Departamento de Hacienda el 16 de junio de 1972. En dicha comunicación el querellado le indica al Departamento de Hacienda que dos semanas antes había cambiado de [*sic*] impresiones con el amigo suyo Leopoldo J. Vázquez Navarro, Contador Público Autorizado, con oficinas en Guayama, con miras a que antes de finalizar el año 1972 tratara de obtener los datos pertinentes de la Central Aguirre para proceder a preparar las planillas de contribución sobre ingresos. En dicha comunicación el querellado añade que confía en que esa explicación sea satisfactoria para el Departamento de Hacienda. Añade que por haber pedido prórroga en cada uno de los años envueltos, entiende que no cabe acción criminal de clase alguna en su contra. (*Exhibit* 21.) El 13 de febrero de 1973 la Secretaría de Hacienda le cursa un escrito al querellado aludiendo a la comunicación anterior de éste de 26 de septiembre de 1972 y concediéndole 10 días para que rinda las planillas de los años 1964 a 1970. (*Exhibit* 14-C.) El 21 de febrero de 1973 una secretaria del querellado contestó la comunicación del 13 de febrero de 1973 indicándole al Departamento de Hacienda que el querellado continuaba convaleciendo por un disco herniado y que el querellado le había pedido a dicha secretaria que le informara al Departamento de Hacienda que dicho querellado había estado en contacto con el Sr. Vázquez "Naveiro", Contador Público Autorizado, y que confiaba que durante el año 1973 pudieran rendirse todas sus planillas incluyendo la del año 1972. En dicha comuni-

cación la secretaria agrega que el no haber rendido las planillas obedecía a las razones que antes había expuesto el querellado, fundamentalmente en su enfermedad que le impedía acudir diariamente a su bufete. (*Exhibit* 22.)

8. El 25 de mayo de 1973 la Secretaría de Hacienda le cursó una comunicación al querellado en la que le indicaba que uno de sus inspectores de nombre José G. Izquierdo había estado en varias ocasiones a las oficinas del querellado para procurar de éste que rindiera sus planillas de contribución sobre ingresos para los años 1964 al 1970. En dicha comunicación se agrega que hasta la fecha de la misma no se habían recibido dichas planillas en la Secretaría de Hacienda. En esta ocasión se le conceden al querellado quince (15) días para que proceda a radicarlas. (*Exhibit* 14-D.) El querellado no rindió las planillas.

9. Continuaron pasando los años y el querellado se abstuvo de rendir planilla anual de contribución sobre ingresos. En unas ocasiones dejó de rendir planillas esperando a que fueran aprobadas, como lo fueron, amnistías contributivas por el Gobierno de Puerto Rico. (*Exhibit* 31, págs. 18 y 19.) Concedida la amnistía, el querellado consiguió la documentación que hasta ese momento aducía que no había conseguido y alega habérsela entregado a un contador público autorizado, cuyo nombre el querellado se niega a revelar. (*Exhibit* 31, pág. 20.) Por razones que no se explican en la prueba, dicho contador tampoco rindió las planillas y en ocasión de una segunda amnistía el querellado aduce que volvió a proveerle más información y documentos al mismo contador. Según la versión del querellado, a dicho contador le pereció [*sic*] su esposa y por haberlo desajustado dicho deceso, se le extraviaron los documentos. (*Exhibit* 31, págs. 20 y 21.) Aduce el querellado que desde entonces no ha rendido planillas porque le falta información de años anteriores.

10. Con el paso del tiempo y en vista de la infructuosa gestión, el Departamento de Hacienda procedió a iniciar una investigación contributiva del querellado. A dichos efectos el Departamento de Hacienda envió un inspector a las oficinas del querellado y éste le entregó documentación consistente en libretas de cheques, libros, otros documentos, etc. Además le informó sobre los bancos con los que tenía o había tenido cuentas, nombres de empleados suyos, etc. Una vez terminada la investigación contributiva, el querellado fue invitado

a comparecer al Departamento de Hacienda, lugar al que compareció y en el que después de las advertencias legales de rigor, prestó una extensa declaración jurada expositiva de lo que aduce como razones para no haber rendido sus planillas, siendo dicha declaración jurada del día 1ro. de agosto de 1977. (*Exhibit* 31.)

11. El 22 de junio de 1978 el Pueblo de Puerto Rico formuló tres (3) denuncias por delitos graves contra el querellado por éste alegadamente haber intentado evadir y derrotar una gran parte de la contribución sobre ingresos correspondiente a los años contributivos 1974, 1975 y 1976. (Infracciones a la Sección 145(b) de la Ley de Contribución Sobre Ingresos de 1954, según enmendada). Se determinó causa probable para el arresto, se fijó fianza de $30,000.00 en cada uno de los tres (3) cargos y se procedió a ordenar el arresto del querellado. (*Exhibits* 2-A-1, 2-A-2 y 2-A-3.) Posteriormente y por moción del Pueblo de 11 de agosto de 1978, se procedió a enmendar los cargos y en ellos se imputa que el querellado dejó de pagar la contribución sobre ingresos determinada de $14,487.87 para el año 1974, $34,459.48 para el año 1975 y de $10,951.49 para el año 1976. (*Exhibit* 3.) Dicha moción fue radicada en la Sala de San Juan del Tribunal de Distrito el 15 de agosto de 1978.

12. Así las cosas, informado ya de los cargos el querellado, el 22 de septiembre de 1978 procedió a radicar las planillas correspondientes a los años 1974, 1975 y 1976 en la Secretaría de Hacienda. (*Exhibits* 1-A, 1-B y 1-C). Para la confección de dichas tres (3) planillas el querellado se limitó a informar como ingresos para dichos respectivos años las cuantías expresadas en las distintas denuncias, sin hacer expresión de gastos deducibles o incurridos en la generación de ingresos para dichos años. Con la radicación de dichas planillas, el querellado no acompañó pago alguno.

13. El 15 de diciembre de 1978, después de haberse formulado las denuncias pero con anterioridad a la celebración de Vista Preliminar, el Departamento de Hacienda notificó una deficiencia contributiva al querellado para dichos 1974, 1975 y 1976 montante a $123,271.85. (*Exhibit* 26.) Dicha notificación se hace en el formulario impreso y en uno de sus párrafos se indica al querellado que de no estar de acuerdo con dicha determinación, puede radicarse una solicitud de

reconsideración de dichas deficiencias y vista administrativa sobre las mismas. También se le indica que dicha solicitud debería radicarse dentro de los treinta (30) días siguientes a la fecha del depósito de dicha notificación en el correo.

14. En tiempo hábil, el 16 de enero de 1979 el querellado le cursó una comunicación a la Secretaría de Hacienda en la que alude a la anterior del 15 de diciembre de 1978 y en la que indica que eleva a escrito la solicitud de reconsideración de las deficiencias que le habían sido notificadas y pide vista administrativa con el propósito de que se reajusten las deficiencias imputadas a la realidad y a lo que procede en derecho y que una vez ajustadas se le conceda un plan de pago justo y razonable para acogerse al mismo. (*Exhibit* 27.)

15. El 22 de diciembre de 1978 se celebró finalmente la Vista Preliminar con relación a los cargos que se le imputaban y resultó que se hizo una determinación de causa probable por tres (3) cargos menos graves de infracciones a la Sección 145(a) de la Ley de Contribución Sobre Ingresos de 1954. (T.E., pág. 121.) La correspondiente acusación por los aludidos tres (3) cargos fue radicada el 16 de enero de 1979 ante el Honorable Tribunal Superior, Sala de San Juan. (*Exhibit* 4.) El 13 de julio de 1979, en los casos identificados como M79-125, 126 y 127, por infracción a la Sección 145(a) de la Ley de Contribución Sobre Ingresos, el Tribunal Superior de Puerto Rico juzgó y encontró culpable de dichos cargos al querellado. La defensa no presentó prueba. (*Exhibit* 5.) En dicha ocasión el aquí querellado renunció al término que dispone la ley para que se dictara sentencia y solicitó que se le señalara para una fecha lejana el acto correspondiente a dictarle la sentencia de modo que tuviera la oportunidad de resolver el asunto en la Secretaría de Hacienda. (Así surge de la minuta de la vista de ese día, *Exhibit* 5.) El acto del pronunciamiento de la sentencia se señaló entonces para el 7 de septiembre de 1979. Por razones que no fueron objeto de prueba, la sentencia no fue pronunciada en dicha fecha.

16. El 24 de octubre de 1979 la Secretaría de Hacienda le cursó una comunicación escrita al querellado en la que le indica que la Notificación Preliminar de Deficiencia del 15 de diciembre de 1978 es dejada sin efecto en cuanto a los años 1974, 1975 y 1976, excepto por la notificación de penalidades. En dicha comunicación se le indica al querellado que el

procedimiento establecido en la ley no requiere que la contribución autoimpuesta se notifique bajo las disposiciones de la Sección 272(a) de la Ley de Contribuciones Sobre Ingresos de 1954 y que cuando la contribución es autoimpuesta corresponde al contribuyente efectuar el pago de la contribución. Pone al alcance del querellado las alternativas de enmendar las planillas o de pagar la contribución tasada y luego solicitar el reintegro por la parte de la contribución que considere pagada en exceso. (*Exhibit* 28.) El 15 de noviembre de 1979 el querellado le cursa una comunicación escrita al Departamento de Hacienda en [la] que alude a la comunicación que se menciona antes. En ella el querellado le indica al Departamento de Hacienda que su Solicitud de Reconsideración y Vista contenida en su carta del 16 de enero de 1979 obedeció a la información que se provee en el formulario que le fue enviado el 15 de diciembre de 1978 en el que se le indicaba que podía solicitar reconsideración y vista administrativa. En la misma comunicación del 15 de noviembre de 1979 el querellado procede a solicitarle sesenta (60) días adicionales para acogerse a la alternativa de rendir planillas enmendadas. (*Exhibit* 29.) En esa misma fecha del 15 de noviembre de 1979 el querellado le cursa a otro funcionario del Departamento de Hacienda otra comunicación escrita en la que hace una relación de visitas que había cursado al Departamento de Hacienda en 10, 13 y 26 de julio; 14, 18, 21 y 25 de septiembre; 5, 9, 18 y 23 de octubre de 1979. (*Exhibit* 30.) Bien. Durante esas fechas el querellado intentó que se le concediera la vista administrativa pero se le había informado que estaba bajo consideración, entre otras cosas que le fueron expuestas como razones, el asunto de si en su caso procedía o no dicha vista por haber sido autoimpuesta la contribución.

17. Así las cosas, el 5 de septiembre de 1980 se celebró el Acto de Pronunciamiento de Sentencia y el querellado fue condenado a satisfacer tres (3) multas de $500.00 y tres (3) penas de cárcel por el término de seis (6) meses, concurrentes entre sí. (*Exhibits* 6 y 7.) La pena de cárcel fue dejada en suspenso en dicha ocasión sujeto a que el querellado cumpliera con las condiciones que le impusiera el oficial probatorio correspondiente. El 20 de noviembre el Honorable Procurador General de Puerto Rico presentó la querella de autos, la que produjo el Mandamiento emitido por esta superioridad el 24 de noviembre de 1980 y el cual le fuera notificado al quere-

llado el 25 de noviembre del mismo año 1980. El 3 de diciembre de 1980, mientras cumplía las tres (3) sentencias de seis (6) meses de cárcel que le había impuesto el Tribunal Superior, el querellado presentó una Moción Solicitando Corrección de Sentencia ante el Tribunal Superior de Puerto Rico en la que solicitó que se dejara sin efecto la pena de cárcel y en la que se aducía que el querellado había hecho una cesión de crédito de $50,000.00 al Departamento de Hacienda mediante estipulación en cierto caso civil. (*Exhibit* 8.) El 5 de diciembre el Tribunal Superior accedió a dicha solicitud y notificó la providencia el 10 de diciembre de 1980. (*Exhibit* 9.) El 31 de diciembre de 1980 el querellado procedió a radicar su Contestación a la Querella en este asunto. El 29 de enero de 1981 el Pueblo de Puerto Rico presentó ante el Tribunal Superior una Moción de Reconsideración sobre la actuación del Tribunal con relación a la Solicitud de Corrección de Sentencia, en cuya moción, entre otras cosas, el Fiscal indica que no fue notificado de dicha moción y pide que reconsidere su dictamen y reimponga la pena de cárcel y que exija al querellado como condición que comparezca al Departamento de Hacienda e implemente un plan de pago de la deuda contributiva pendiente antes del 15 de febrero de 1981. (*Exhibit* 10.)

Según surge de la minuta del 24 de febrero de 1981 (*exhibit* 11), el Tribunal celebró vista para la discusión de la Moción de Reconsideración y luego de que la defensa expresó que tenía en su poder un cheque certificado a favor del Departamento de Hacienda por la cantidad de $10,000.00 para ser entregado al representante de dicho Departamento y que el querellado pagaría $4,000.00 mensuales hasta cubrir su deuda, el Tribunal mantuvo la determinación de dejar sin efecto o relevar de la sentencia de pena de cárcel al querellado. En dicha ocasión el Tribunal dispuso que el querellado debería continuar pagando dichos $4,000.00 mensuales al Departamento de Hacienda bajo apercibimiento de desacato, según fuera ello expresado por la defensa sin objeción del querellado. No ha cumplido, pero aduce que es porque nada adeuda. Según certificación de deuda contributiva fechada 2 de marzo de 1981 (*exhibit* 23), el querellado adeuda contribuciones sobre ingresos e intereses y recargos sobre las mismas montantes a $188,130.30 para los años 1974 a 1976, inclusive.

Aceptados los hechos por el querellado, solo resta determinar si su conducta constituye depravación moral.

■■■ En *Morales Merced* v. *Tribunal Superior*, 93 D.P.R. 423, 430 (1966), consignamos que "[l]a depravación moral, tratándose de abogados, consiste, según se resolvió en *In re Disbarment of Coffey*, 123 Cal. 522, en hacer algo contrario a la justicia, la honradez, los buenos principios o la moral, como el delito de extorsión o el de desfalco. En *Jordan* v. *De George*, 341 U.S. 223, 229 (1951) se resolvió que todo delito en que el fraude era un ingrediente básico siempre se había considerado que implicaba torpeza moral. En general la consideramos como un estado o condición del individuo, compuesto por una deficiencia inherente de su sentido de la moral y la rectitud; en que la persona ha dejado de preocuparse por el respeto y la seguridad de la vida humana y todo lo que hace es esencialmente malo, doloso, fraudulento, inmoral, vil en su naturaleza y dañino en sus consecuencias. El Diccionario de la Lengua Española, en su decimaoctava edición, nos dice que la voz 'Depravar', significa viciar, adulterar, corromper, y que 'Depravadamente', significa malvadamente, con malicia suma".

■■■ En *In Re Tormes*, 30 D.P.R. 267, 270 (1922), expresamos "que podrá ser también suspendido o destituído de su profesión el abogado que fuere culpable de *cualquier delito que implicare depravación moral.* Ya no se trata de un acto directamente relacionado con la profesión. El legislador, considerando que cualquier depravación moral incapacita a una persona para el ejercicio de la abogacía, sanciona el principio de que tal depravación sea base para la separación aunque se haya cometido fuera de la esfera de acción del abogado". Ver además: *Colegio de Abogados de P.R.* v. *Barney*, 109 D.P.R. 845 (1980); *Matter of Nicholson*, 257 S.E.2d 195 (1979); Annot., *Attorneys—Tax Offense as Misconduct*, 63 A.L.R.3d 512 (1975); S. Stoddard y C. Stutsman,

Jr., *Income Tax Offenses by Lawyers: An Ethical Problem,* 58 A.B.A.J. 842 (1972).

Procede ahora considerar las actuaciones del querellado a la luz de lo consignado.

■ El querellado advino al ejercicio de la profesión luego de haber ejercido otra profesión. A partir de su admisión a la nueva disciplina adoptó como norma no radicar las planillas de contribución sobre ingresos. Aun después de ser procesado y convicto por tal actuación tampoco radicó las planillas para los siguientes años. Convicto del delito de no radicar las correspondientes planillas fue condenado a pagar una multa y a sufrir cárcel. Se comprometió a satisfacer la suma de $10,000 y pagar $4,000 mensuales como condición para que se eliminara la pena de cárcel. Se eliminó. Una vez pagados los $10,000 iniciales, no cumplió con el resto del acuerdo.

Es claro que la conducta contumaz del querellado implica un absoluto menosprecio de la ley y las buenas normas de conducta, que lo imposibilitan de ejercer la profesión de abogado.

*Así se decretará.*

Los Jueces Asociados Señores Díaz Cruz e Irizarry Yunqué son del criterio que un año de suspensión es suficiente sanción. Radicaron opinión a esos efectos. El Juez Presidente Señor Trías Monge y el Juez Asociado Señor Rebollo López se inhibieron.

—O—

Voto disidente del Juez Asociado Señor Díaz Cruz al que se une el Juez Asociado Señor Irizarry Yunqué.

Disiento. Considero que calificados como delitos menos grave los actos del querellado, sin imputación de *fraude,* no se justifica incorporar ese elemento para concluir que su conducta es depravada. El propio caso *Matter of Nicholson,* 257 S.E.2d 195 (1979), citado como autoridad y único apli-

cable a esta situación de hechos, reconoce la necesidad de distinguir en grado de ofensa([1]) entre *no radicar* y *radicar* una planilla falsa. Hay que guardar particular exigencia y restringir nuestra mano en casos mal titulados de conducta profesional, en que el querellado ha sostenido una posición equivocada, mas sin eludir la confrontación, como lo demuestran sus numerosas gestiones.

Limitaría a un año la suspensión de este abogado, rescindible si al cumplirse el término hubiere asumido y normalizado su responsabilidad contributiva. No hay que llegar a la extinción del abogado y del contribuyente.

---

([1]) La condena por delito menor en contribución sobre ingresos no ha afectado la reputación moral de congresistas y alcaldes de grandes ciudades en los Estados Unidos.