*In re* JOSÉ G. MARRERO LUNA, querellado.

*Número:* AB-96-05          *Resuelto:* 7 de marzo de 1996

*Jackeline Novas Debién, Subprocuradora General,* e *Yvonne Casanova Pelosi, Procuradora General Auxiliar,* abogadas de El Pueblo.

— o —

Voto disidente del Juez Asociado Señor Negrón García.

I

Decía Couture, que "[c]*omo ética, la abogacía es un constante ejercicio de la virtud*". Este profundo pensamiento, en conjunción armoniosa con varios principios doctrinarios vi-

talmente enraizados al prestigio de este Tribunal y a la nobleza de la profesión de abogado, inspiran este disentir.

*Primero*, el Código de Ética Profesional es un *faro permanente* que se proyecta sobre "todo abogado, *como ciudadano* y en su capacidad profesional, ya sea como juez, fiscal, abogado postulante, asesor o en cualquier otro carácter". (Énfasis suplido.) Criterio General, Deberes del Abogado para con la Sociedad, Código de Ética Profesional, 4 L.P.R.A. Ap. IX.

La confianza pública depositada exige "tanto en su vida privada como en el desempeño de su profesión, [el] debe[r] de conducirse en forma digna y honorable". Canon 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX (Preservación del Honor y Dignidad de la Profesión). El *honor*, y, por ende, el adjetivo *honorable* se ganan con una constante rectitud de ánimo, honradez e integridad al obrar. De esas cualidades, "[l]a probidad es la primera y la más importante. 'No se puede ser un perfecto abogado —expresaba por eso Biarnoy de Marville— si no es un hombre honesto y un hombre de bien'. 'Si es útil en el hombre —afirmaba Molliot— la probidad, es todo en el abogado' ". J. León Barandiarán, *El Abogado*, Año XXXVI Rev. Leg. y Jur. 145 (1947).

El requisito de la honestidad, probidad y moralidad en el abogado ha sido siempre una exigencia axiomática en nuestra profesión.

*Segundo*, el "abogado, en cuanto obedece a normas superiores de carácter especial, en cuanto amplía la esfera de valores a que se somete, es persona en una doble circunstancia: primero como hombre, *obedeciendo valores comunes para todos*, ejerciendo 'la profesión del propio hombre' como dice Sauer; segundo, como abogado, asimilando y siguiendo los valores vigentes para tales". (Énfasis suplido.) J.B. Iturraspe, *Función Social de la Abogacía*, Santa Fe, Argentina, Ed. Castellví, 1967, págs. 125–126.

*Tercero*, este Tribunal Supremo tiene la indelegable función de imprimirle contenido disciplinario a los valores éticos, como medio de mantener elevada la imagen del abogado puertorriqueño, coadyuvante de la calidad de la justicia que administramos y de la fe ciudadana. A fin de cuentas, "[c]ada abogado es un espejo en que se refleja la imagen de la profesión. Sus actuaciones reflejan ante la comunidad las bases del concepto que ésta se forme, no solamente del abogado en particular que actúa, sino también de la clase profesional toda que debe representar con limpieza, lealtad, y el más escrupuloso sentido de responsabilidad". *In re Coll Pujols*, 102 D.P.R. 313, 319 (1974).

Sabido es que en derecho, el honor tiene dos (2) vertientes inextricablemente unidas, a saber: la *inherente*, representada por la autoestima individual, y la *trascendencia*, que corresponde a la estimativa que los demás tienen de nuestra dignidad. "El honor o el deshonor propio se transmite a todo el cuerpo, como por vasos comunicantes." R.H. Viñas, *Ética de la abogacía y de la procuración*, Buenos Aires, Ed. Pannedille, 1972, pág. 132.

*Cuarto*, reiteradamente hemos sostenido que

[l]a depravación moral, tratándose de abogados, consiste, ... en *hacer algo contrario a la justicia, la honradez, los buenos principios o la moral*, como el delito de extorsión o el de desfalco. En *Jordan v. De George*, 341 U.S. 223, 229 (1951) se resolvió que todo delito en que el fraude era un ingrediente básico siempre se había considerado que implicaba torpeza moral.

En general la consideramos como un estado o condición del individuo, compuesto por una deficiencia inherente de su sentido de la moral y la rectitud; en que la persona ha dejado de preocuparse por el respeto y la seguridad de la vida humana y todo lo que hace es esencialmente malo, doloso, fraudulento, inmoral, vil en su naturaleza y dañino en sus consecuencias.

El Diccionario de la Lengua Española, en su decimaoctava edición, nos dice que la voz "Depravar", significa viciar, adulterar, corromper, y que "Depravadamente", significa malvada-

mente, con malicia suma. *Morales Merced v. Tribunal Superior*, 93 D.P.R. 423, 430 (1966). Véanse: *In re García Quintero*, 138 D.P.R. 669 (1995); *In re Boscio Monllor*, 116 D.P.R. 692 (1985).

*Quinto*, constituye doctrina firmemente establecida en nuestra jurisdicción que la causa de desaforo o suspensión del ejercicio de la profesión de abogado no tiene necesariamente que surgir con motivo de la actividad profesional, basta con que afecte las condiciones morales del querellado. *In re Rivera Cintrón*, 114 D.P.R. 481, 491 (1983); *Colegio de Abogados de P.R. v. Barney*, 109 D.P.R. 845, 848 (1980); *In re Liceaga*, 82 D.P.R. 252, 255–256 (1961).

La razón es sencilla: "En ciertas materias es imposible distinguir el hombre del abogado. El honor y la dignidad del abogado no pueden existir sin la integridad de la vida privada; no es posible que el abogado sea investido del carácter honorable y digno que le impone el espíritu de su estado, si el hombre privado se [dedica] a acciones represibles." A. Parry, *Ética de la Abogacía*, Buenos Aires, Ed. Jur. Argentina, 1940, Tomo I, pág. 94.

*Sexto*, al amparo de esta visión (con vista en los autos originales, en la copia de las acusaciones y en la sentencia criminal),([1]) en el pasado, como regla general, hemos ejercitado nuestra jurisdicción disciplinaria y *suspendido inmediatamente* al abogado *convicto de cualquier delito que implique depravación moral.* Sec. 9 de la Ley de 11 de marzo de 1909 (4 L.P.R.A. sec. 735).

Se trata de una *conclusión de derecho inextricablemente unida a los hechos que son objeto de la acusación*, que han sido admitidos con una alegación de culpabilidad o han sido demostrados mediante prueba más allá de duda razonable.([2]) *In re Rivera Flores*, 139 D.P.R. 310 (1995); *In*

---

([1]) No se cuestiona seriamente la facultad de este tribunal para tomar conocimiento judicial de los autos de las causas penales ante los foros de instancia.

([2]) Sabido es que toda acusación contiene una exposición de los hechos esenciales constitutivos del delito, que está redactada en un lenguaje sencillo, claro y con-

*re Hernández Pérez*, 138 D.P.R. 791 (1995); *In re García Quintero*, supra; *In re Rojas Jiménez*, 134 D.P.R. 732 (1993); *In re Medina Lugo*, 134 D.P.R. 373 (1993); *In re Fuentes Fernández*, 133 D.P.R. 548 (1993); *In re Maldonado Rivera*, 133 D.P.R. 207 (1993); *In re Farinacci García*, 133 D.P.R. 206 (1993); *In re Bonilla Martínez*, 132 D.P.R. 1038 (1993); *In re Bobet Ruiz*, 132 D.P.R. 881 (1993); *In re Rúa Cabrer*, 132 D.P.R. 431 (1992); *In re Ríos Ruiz*, 129 D.P.R. 666 (1991); *In re Rivera Medina*, 127 D.P.R. 600 (1990); *In re Santiago Martínez*, 123 D.P.R. 359 (1989); *In re Santiago Casanova*, 122 D.P.R. 489 (1988); *In re Dalmau Gómez*, 122 D.P.R. 360 (1988); *In re Pérez Reilly*, 120 D.P.R. 517 (1988); *In re Malavé Ortiz*, 119 D.P.R. 492 (1987); *In re Flores Betancourt*, 119 D.P.R. 479 (1987); *In re Torres López*, 119 D.P.R. 55 (1987); *In re Ortiz Gilot*, 117 D.P.R. 167 (1986); *In re Gutiérrez Díaz*, 117 D.P.R. 92 (1986); *In re Boscio Monllor*, supra; *In re Núñez López*, 115 D.P.R. 702 (1984); *In re Sánchez Gómez*, 115 D.P.R. 74 (1984); *In re Arreche Holdun*, 114 D.P.R. 680 (1983); *In re Rivera Cintrón*, supra; *In re Tormes*, 30 D.P.R. 267 (1922).

## II

Con este trasfondo doctrinario y casuístico en mente, expongamos ahora los hechos, según el informe y los anejos presentados por el Procurador General. Previa investigación al efecto, el Departamento de Hacienda detectó las siguientes serias deficiencias en las planillas contributivas

ciso, y de tal modo que pueda entenderla cualquier persona de inteligencia común. *Pueblo v. Narváez Narváez*, 122 D.P.R. 80 (1988); *Pueblo v. Calviño Cereijo*, 110 D.P.R. 691 (1981).

No es necesario calificar el delito en la denuncia o acusación. De existir un conflicto entre los hechos y su calificación, prevalecen los hechos, pues éstos son los que realmente sirven de base para identificar el delito. Si en lo subsiguiente la acusación es sustancialmente enmendada, será mandatoria una nueva lectura de la acusación. Regla 38 de Procedimiento Criminal, 34 L.P.R.A. Ap. II. Véanse: *Pueblo v. Flores Betancourt*, 124 D.P.R. 867 (1989); *Pueblo v. Belén*, 96 D.P.R. 669 (1968). Al declararse culpable, todo acusado admite los hechos alegados en la acusación, salvo que expresamente se hubiesen enmendado.

del Lcdo. José G. Marrero Luna: para 1986 recibió ingresos *por servicios profesionales* ascendentes a $228,008.20, sin embargo, *informó en su planilla sólo* $47,000; durante 1988 devengó ingresos por $70,428.16 y no rindió su planilla contributiva, y para 1990 informó haber devengado $19,400, aun cuando generó como abogado $65,000.

Marrero Luna fue acusado de violar los Arts. 241 y 242 del Código Penal, 33 L.P.R.A. secs. 4437 y 4438; esto es, preparar escritos falsos y presentarlos en trámites oficiales, respectivamente. Además, se le imputaron infracciones a la Sec. 425(b)(1) de la Ley de Contribuciones sobre Ingresos de 1954 (13 L.P.R.A. ant. sec. 3425 (b)(1)); a saber, suscribir bajo penalidad de perjurio, una planilla cuando conocía que los hechos no eran ciertos.

Luego de varias conversaciones con el Ministerio Público, Marrero Luna *aceptó estos hechos* e hizo una alegación de *culpabilidad* por dos (2) cargos de violación al Art. 214 del Código Penal —omisión en el cumplimiento del deber por funcionario o empleado público— 33 L.P.R.A. sec. 4365, y por tres (3) cargos a la Sec. 145 de la Ley de Contribuciones sobre Ingresos de 1954 —dejar de rendir planillas y de pagar contribuciones— 13 L.P.R.A. sec. 3145(a); todos son delitos *menos graves.* Como condición a esas alegaciones preacordadas, se le requirió pagar $75,000 al Departamento de Hacienda en concepto de contribuciones adeudadas, para lo cual se estableció un plan de pago.

## III

De la faz de estos hechos y convicciones, podemos colegir la gravedad y sustancialidad de las deficiencias en las planillas de Marrero Luna y una reiterada conducta *fraudulenta.* No se trata de simples errores en el cómputo o unas deficiencias como resultado de una interpretación *bona fide*, honesta y razonable en materia contributiva.

En contrario, su comportamiento pone de manifiesto el

elemento intencional de faltar a la honradez y rectitud requerida legalmente a todo ciudadano al llenar su planilla contributiva, máxime por un abogado, que es depositario de la confianza social y mediante juramento contrae el compromiso de comportarse respetuoso de la ley y de manera ejemplarizante.

*Estamos ante una conducta contraria a la justicia, la honradez, los buenos principios y la moral.* A los fines del caso que nos ocupa, la conducta fraudulenta de Marrero Luna al ofrecer información falsa —en una planilla cuya veracidad de su contenido fue jurada *bajo apercibimiento de perjurio*— es indicativo de depravación y torpeza moral. Así lo habíamos resuelto en *In re Rivera Cintrón*, supra.[3]

Por su importancia, reproducimos el pensamiento siguiente:

> La astucia es el vicio, no el espíritu de la profesión, el engaño es la prostitución profesional; la falsedad es la apostacía profesional. La fuerza de un abogado consiste en su perfecto conocimiento de la verdad legal, en una perfecta devoción al derecho legal. La verdad e la integridad pueden hacer más en la profesión, que [los ingeniosos y fraudulentos artificios]. El poder de la integridad es la regla, el poder del fraude es la excepción. La emulación y el celo desvían a los abogados pero la ley general de la profesión es el deber, no el éxito. En esto, como [en cualquier cosa, en] la vida humana, el juicio sobre lo que consiste el éxito es sólamente el veredicto de los espíritus pequeños. El deber profesional, fiel y bien llevado a cabo, es la gloria del abogado. [Ésta es la uniforme certeza de la justicia y del foro]. Edward Ryan, citado por Parry, *op. cit.*, Tomo II, págs. 8-9.

Marrero Luna faltó a su obligación de preservar el honor y la dignidad de la profesión. Su conducta es grave, pues se trata de ingresos adquiridos en concepto de honorarios como abogado. Revela un patrón de conducta frau-

---

[3] Véase *Attorneys—"Moral Turpitude"— Tax Offense*, 63 A.L.R.3d 476 (1975), y *Attorneys—Tax Offense as Misconduct*, 63 A.L.R.3d 512 (1975).

dulenta reiterada; lamentable ejemplo de lo que jamás debe hacerse.

## IV

Aunque el saldo nos duela "hay profesiones que no se compadecen con los 'términos medios', con las 'medias tintas' en su ejercicio". F. Soto Nieto, *Compromiso de Justicia*, Madrid, Ed. Montecorvo, 1987, pág. 29. "La abogacía, dado su carácter de 'profesión de confianza', debe ser más exigente que otras en la reprobación de la simulación, del fraude y de todo acto que tienda a desvirtuar la verdad o a vulnerar la equidad". S. Syro Giraldo, *Ética de la Abogacía*, Derecho, Rev. C. Abo. de Medellín, Colombia, Tomo XVIII, pág. 37.

Dictaríamos la sentencia para decretar la suspensión indefinida de Marrero Luna del ejercicio de la abogacía y notaría, y ordenar al Alguacil del Tribunal incautarse de su obra notarial para oportunamente ser examinada por la Oficina de Inspección de Notarías.