*In re* LUIS E. DUBÓN OTERO, querellado.

*Número:* TS-1962          *Resuelto:* 17 de abril de 2001

*Gustavo A. Gelpí, Procurador General; Luis E. Dubón Otero, pro se.*

## RESOLUCIÓN

Vista la querella presentada por la Oficina del Procurador General, *se le ordena a nuestra Secretaria registrarla inmediatamente en el libro correspondiente y expedir mandamiento dirigido al querellado requiriéndole que la conteste, dentro del término de cinco (5) días de su notificación, y para que, dentro de ese mismo término, muestre causa por la cual no debamos suspenderlo provisionalmente de la abogacía hasta que otra cosa disponga este Tribunal. Reglas 14(f) y 50 de nuestro Reglamento, 4 L.P.R.A. Ap. XXI-A.*

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado Señor Rebollo López emitió un voto particular de conformidad, al cual se unió el Juez Asociado Señor Hernández Denton. La Jueza Asociada Señora Naveira de Rodón no intervino. El Juez Asociado Señor Fuster Berlingeri emitió un voto disidente, al cual se unió el Juez Presidente Señor Andreu García. El Juez Aso-

ciado Señor Rivera Pérez emitió un voto particular de conformidad.

(*Fdo.*) Isabel Llompart Zeno
*Secretaria del Tribunal Supremo*

— O —

Voto disidente emitido por el Juez Asociado Señor Fuster Berlingeri, al cual se une el Juez Presidente Señor Andreu García.

Disiento de lo que dispone una mayoría del Tribunal en su resolución en el caso de autos porque es *mucho menos* que lo que en Derecho procede que se ordene. Conforme a las disposiciones estatutarias pertinentes, a lo reiteradamente establecido por nuestra jurisprudencia y a nuestra práctica invariable hasta ahora, en un caso como el de autos, que *trata específicamente con la situación de un abogado convicto por delito grave que implica depravación moral*, este Tribunal ha debido ordenar la *separación inmediata e indefinida* del querellado del ejercicio profesional. En lugar de ello, la Mayoría dispone aquí un curso de acción que *altera en dos extremos* lo que siempre habíamos hecho antes. En primer lugar, *no se ordena la suspensión inmediata*, sino que se le concede un término al abogado convicto de delito grave que implica depravación moral, para que éste muestre causa por la cual no deba suspendérsele. Tomando en cuenta el tiempo que transcurre en lo que se notifican nuestras resoluciones, en lo que se le da turno y se pone en calendario la contestación del querellado y en lo que este Foro actúa, lo anterior significa que un abogado convicto de delito grave que implica depravación moral *puede estar ejerciendo la profesión por semanas o meses* después que el Procurador General ha presentado ante nos su querella contra éste.

El segundo cambio es que cuando al fin se ordena *la suspensión* del abogado convicto de delito grave que im-

plica depravación moral, dicha *suspensión es sólo provisional y no indefinida* como siempre había sido. De este modo, una mayoría del Tribunal le concede al querellado del caso de autos *dos privilegios* que le ha negado antes, incluso muy recientemente, a muchos otros abogados convictos de delitos graves que implican depravación moral. Como no estoy de acuerdo con este *trato desigual*, que el propio querellado *ni siquiera ha pedido*, disiento. Veamos.

## I

La Sec. 9 de la Ley de 11 de marzo de 1909 (4 L.P.R.A. sec. 735) en lo pertinente dispone lo siguiente:

> La persona que siendo abogado fuere convicta *de un delito grave* cometido en conexión con la práctica de su profesión o *que implique depravación moral, cesará convicta que fuere, de ser abogado* o de ser competente para la práctica de su profesión. *A la presentación de una copia certificada de la sentencia dictada al Tribunal Supremo, el nombre de la persona convicta será borrado, por orden del Tribunal, del registro de abogados.* Al ser revocada dicha sentencia, o mediante el perdón del Presidente de los Estados Unidos o del Gobernador de Puerto Rico, el Tribunal Supremo estará facultada [sic] para dejar sin efecto o modificar la orden de suspensión. (Énfasis suplido.)

Por espacio de *mucho más de medio siglo*, ha sido la práctica consuetudinaria de este Tribunal desaforar sin ulteriores procedimientos a los abogados convictos de delito grave que implique depravación moral, una vez se nos notifica la sentencia condenatoria. En efecto, hemos señalado expresamente en ocasiones que la convicción referida:

> ... es incompatible con la práctica de la profesión legal y más aún causa grave que les descalifica *automáticamente* para continuar en el ejercicio de la abogacía. Las funciones que le asisten a los abogados como oficiales del Tribunal hacen que un abogado convicto de delito grave o menos grave que implique depravación moral esté incapacitado para desempeñar éticamente los deberes y obligaciones que como abogado le

corresponden. (Citas omitidas.) *In re Boscio Monllor*, 116 D.P.R. 692, 697 (1985).

Igualmente, en *In re Flores Betancourt*, 119 D.P.R. 479 (1987), señalamos que, aunque en esa ocasión *el Tribunal estaba en receso*, era necesario *actuar de inmediato* para desaforar a un abogado convicto de delito grave que implicaba depravación moral porque la posibilidad de que ese abogado convicto continuara ejerciendo la profesión resultaba

... desmoralizante para los componentes de la Rama Judicial y mal ejemplo para los que con ella se relacionan. *In re Flores Betancourt*, supra, pág. 482.

La interpretación y aplicación nuestra de la Sec. 9 de la ley referida, *supra*, data al menos de hace casi *ochenta años*, cuando en *In re Tormes*, 30 D.P.R. 267, 270 (1922), señalamos que:

El legislador, considerando que cualquier depravación moral *incapacita a una persona para el ejercicio de la abogacía*, sanciona el principio de que tal depravación sea base para la separación aunque se haya cometido fuera de la esfera de acción del abogado.

. . . . . . . .

... *basta una copia certificada de la sentencia para actuar en definitiva*. (Énfasis suplido.)

Más adelante en esa misma opinión, en la pág. 272, señalamos que la actuación referida del abogado era tan descalificante que

... la Corte Suprema en los casos que el delito independiente cometido envuelva depravación moral, *no está obligada a esperar que la causa criminal se instruya y decida en definitiva* .... (Énfasis suplido.) *In re Tormes*, supra, pág. 272.

Se indicó expresamente que en tales casos se debía *"proceder sin demora"*.

Las expresiones referidas de este Foro pueden resumirse sucintamente en una norma a la vez sencilla y pri-

mordial: que el Tribunal Supremo de Puerto Rico tiene la obligación fundamental de velar por que cualquier persona admitida al ejercicio de la abogacía sea en todo momento *"digna de la confianza pública"*. *In re Casablanca*, 34 D.P.R. 970 (1925). Como ha reconocido expresamente el Tribunal Supremo de Estados Unidos, los abogados son funcionarios judiciales (*Officer of the Court*), por lo que la licencia que les extiende el foro judicial para ejercer como tal requiere que en todo momento estén aptos para actuar de manera compatible con su rol en la administración de la justicia ("in a manner compatible with the role of courts in the administration of justice"), *In re Snyder*, 86 L. Ed. 2d 504, 513 (1985). No puede ser un instrumento leal y eficaz de la administración de la justicia y del orden en nuestra sociedad, *In re Díaz*, 16 D.P.R. 82, 92 (1910), aquel que ha sido convicto de delito grave que implica depravación moral. Por ello, su convicción por tal delito apareja la suspensión automática del alto privilegio de ser instrumento de la recta administración de la justicia. *In re Boscio Monllor*, supra; *In re Núñez López*, 115 D.P.R. 702 (1984); *In re Tormes*, supra. Véase, además, *In re Padilla*, 87 D.P.R. 236, 260 (1963).

Véase, además, la siguiente jurisprudencia que trata toda de casos en que ordenamos la *separación indefinida o permanente* del abogado convicto de delito grave *sólo con la presentación de la sentencia condenatoria*: *In re Colón Muñoz*, 149 D.P.R. 627 (1999); *In re Castrillón Ramírez*, 149 D.P.R. 88 (1999); *In re Hernández Pérez*, 138 D.P.R. 791 (1995); *In re García Quintero*, 138 D.P.R. 669 (1995); *In re Medina Lugo*, 134 D.P.R. 373 (1993); *In re Fuentes Fernández*, 133 D.P.R. 548 (1993); *In re Maldonado Rivera*, 133 D.P.R. 207 (1993); *In re Farinacci García*, 133 D.P.R. 206 (1993); *In re Bonilla Martínez*, 132 D.P.R. 1038 (1993); *In re Rúa Cabrer*, 132 D.P.R. 431 (1992); *In re Ríos Ruiz*, 129 D.P.R. 666 (1991); *In re Caparrós Rivera*, 128 D.P.R. 205 (1991); *In re Benítez Echevarría*, 128 D.P.R. 176 (1991); *In*

*re Rivera Medina,* 127 D.P.R. 600 (1990); *In re Santiago Casanova,* 122 D.P.R. 489 (1988); *In re Dalmau Gómez,* 122 D.P.R. 360 (1988); *In re Pérez Reilly,* 120 D.P.R. 517 (1988); *In re Flores Betancourt,* supra; *In re Malavé Ortiz,* 119 D.P.R. 492 (1987); *In re Torres López,* 119 D.P.R. 55 (1987); *In re Zamot Pérez,* 119 D.P.R. 58 (1987); *In re Elías Rivera,* 118 D.P.R. 174 (1986); *In re Cruz Vázquez,* 117 D.P.R. 806 (1986); *In re Hita Giordani,* 117 D.P.R. 415 (1986); *In re Ortiz Gilot,* 117 D.P.R. 167 (1986); *In re Gutiérrez Díaz,* 117 D.P.R. 92 (1986); *In re Boscio Monllor,* supra; *In re Sánchez Gómez,* 115 D.P.R. 74 (1984); *In re Núñez López,* supra; *In re Varona Pacheco,* 71 D.P.R. 411 (1950); *In re Tormes,* supra.

Debe destacarse también que en varios de los casos referidos ordenamos la separación indefinida del abogado convicto de delito grave, *a pesar de estar pendiente el proceso de apelación de tal convicción, In re Boscio Monllor,* supra; *In re Medina Lugo,* supra; *o a pesar de que el abogado en cuestión nos pidió que dejáramos pendiente el asunto mientras se completaba el trámite apelativo, In re Castrillón Ramírez,* supra.[1]

Conforme a la ley y a la jurisprudencia referida, pues, en casos en que un abogado ha sido convicto de delito grave que implica depravación moral, dicho abogado queda *descalificado automáticamente* para ejercer la profesión desde el momento en que recaiga el veredicto condenatorio; y este Tribunal viene obligado a declarar su *desaforo* tan pronto conozca de la sentencia condenatoria y *sin ulterior procedimiento.*

El proceder referido ha sido observado consuetudinariamente por este Tribunal hasta el caso de autos. Sin embargo, *ahora, de buena a primeras, la mayoría de este Foro decide alterar su comportamiento institucional casi*

---

[1] Véase la solicitud de reconsideración de Castrillón Ramírez de 30 de agosto de 1999 y nuestra resolución en la que se deniega dejar sin efecto la separación en cuestión de 24 de septiembre de 1999.

*centenario.* En efecto, decide *sub silentium* que su proceder en docenas de casos, incluidos muchísimos de ellos que son muy recientes, resueltos sólo hace unos meses atrás, *estuvo errado.* Asimismo decide, además, que la citada disposición de ley que aplica aquí no es válida o es sólo directiva, a pesar de haber sido citada con aprobación y como fundamento de nuestras decisiones previas, en docenas de casos. *Resulta entonces que la mayoría del Tribunal actual y las mayorías de este Foro durante muchas décadas, tan bien entendidas y eruditas sobre temas constitucionales, han estado erradas en docenas de casos como el de autos, ¡incluidos unos resueltos muy recientemente!*

Ahora resulta que no puede ordenarse la suspensión de un convicto de delito grave que implica depravación moral *sin antes haberle ordenado mostrar causa por la cual no deba ser suspendido*, por supuestos imperativos del debido proceso de ley, que repetidamente ignoramos antes. Resulta, además, que aunque después de escuchar al querellado se compruebe que no tiene defensas válidas, sólo puede suspendérsele *provisionalmente* mientras continúe el proceso apelativo, también por supuestos imperativos del debido proceso de ley, que hasta ahora no conocíamos.

El problema con esta súbita e inusitada postura de la Mayoría es que en apoyo de ella *no se cita ninguna decisión judicial que sea verdaderamente pertinente y que nos obligue, ni siquiera alguna verdaderamente pertinente que sólo tenga valor persuasivo.* Nótese que el caso de autos trata de una situación muy particular. El asunto aquí se refiere al caso de un *abogado convicto de delito grave que implica depravación moral.* Es decir, no es meramente un abogado convicto de delito grave sino de un delito grave que implica depravación moral, que es el elemento crucial que justifica y hace necesario que este Tribunal actúe "sin demora". Las decisiones judiciales aisladas y muy escasas de otras jurisdicciones, que reconocen concretamente algún debido proceso de ley cuando se ha de disciplinar a abogados ya con-

victos de cometer delitos, no ponderan de modo alguno la situación especial de la condena por delito grave que implica depravación moral. Por ello, la nueva postura de la mayoría de este Tribunal, en el caso de autos, no está avalada por ninguna opinión del Tribunal Supremo de Estados Unidos, ni siquiera por una de algún foro judicial federal o estatal que concretamente resuelva que en casos como éste, el querellado convicto por el foro federal por haber cometido un delito grave que implica depravación moral, no puede ser suspendido sin antes ordenarle que se exprese, *aunque el abogado no haya solicitado ser escuchado*.

La nueva postura de la mayoría del Tribunal representa un abandono injustificado de la doctrina de que la prerrogativa que el Estado concede de ejercer la abogacía, está sujeta a condiciones tales como el cumplimiento con los cánones del Código de Ética Profesional y poseer y mantener un buen carácter moral. *In re Abella*, 14 D.P.R. 748 (1908). Una de esas condiciones es también la contenida en la Sec. 9 de la ley referida, *supra*, en virtud de la cual el abogado que es condenado por delito grave que implique depravación moral, queda *automáticamente descalificado* para el ejercicio profesional. Los aspirantes al ejercicio profesional conocen esta condición. Al ser admitidos al ejercicio de la abogacía, saben que tal ejercicio está inherentemente sujeto a que no sean condenados por cometer algún delito grave que implique depravación moral. Saben, pues, que al ser convictos por la comisión de algún delito de tal naturaleza, quedan descalificados profesionalmente de inmediato. Véase *In re Casablanca,* supra.

Más aún, la nueva postura rechaza la normativa clásica y tradicional de que en casos como el de autos, el querellado ya recibió el más amplio debido proceso de ley precisamente cuando fue juzgado en el Tribunal de Distrito Federal por la conducta delictiva de depravación moral que se le imputó. Allí tuvo la oportunidad de presentar todas sus

defensas a su favor. Si bien es cierto que en el proceso penal referido el abogado convicto de un delito que implica depravación moral de ordinario no tiene la ocasión para arguir que existen circunstancias particulares atenuantes que mitiguen específicamente la sanción disciplinaria del desaforo, *en la rarísima posibilidad de que alguna existiere*, el abogado convicto puede traerla a la atención de este Foro motu proprio. Todo lo que el debido proceso de ley podría requerir en estos casos extremos es que el abogado convicto sea *notificado* de que se ha solicitado su desaforo, *y que a éste no se le impida comparecer al proceso disciplinario si es que quiere alegar que existen tales raros atenuantes.*

La norma que ha prevalecido hasta ahora en nuestra jurisdicción en casos de abogados convictos de delitos graves que implican depravación moral satisface claramente las exigencias del debido proceso de ley para tales casos. Dicha norma ha sido la de proceder al desaforo una vez el Procurador General nos notifica la sentencia condenatoria mediante una querella contra el abogado convicto, en la cual solicita la sanción disciplinaria. *La referida querella del Procurador General se le notifica también al abogado convicto y nada le impide a éste comparecer ante nos si cree que alguna circunstancia lo ampara.* De ordinario transcurren al menos *varias semanas* desde que el Procurador General notifica la querella hasta la fecha en que la consideramos inicialmente. Durante ese tiempo, nada le impide al abogado convicto de delito grave que implica depravación moral, comparecer ante nos para alegar lo que quiera con respecto a la querella en su contra que el Procurador General le notificó. En efecto, en algunas ocasiones previas en casos como el de autos el querellado ha comparecido ante nos luego de que se le ha notificado la querella y hemos escuchado su planteamiento. Véase *In re Castrillón Ramí-*

*rez*, supra; *In re Rojas Jiménez*, 134 D.P.R. 732 (1993); *In re Malavet Rodríguez*, 115 D.P.R. 680 (1984).

En relación a las exigencias del debido proceso de ley en estos casos, es menester enfatizar la distinción referida antes entre la condena por delito grave que implica depravación moral, y la condena por delito grave que *NO* implica tal depravación. Véase la opinión concurrente del Juez Stewart en *In re Jones*, 696 P.2d 1215 (Utah 1985). En la primera situación, por la gravedad del asunto, el abogado convicto queda automáticamente suspendido del ejercicio de la profesión. Ello, porque la depravación moral implicada por su conducta delictiva es inherentemente incompatible con su condición de funcionario de los tribunales. En cambio, si el delito grave *no* implica depravación moral, la suspensión del abogado convicto puede ser provisional, y este Foro debe darle la oportunidad para presentar atenuantes. Véase *In re Gómez Morales*, 124 D.P.R. 383 (1989). Así pues, *no es lo mismo* un abogado convicto por cometer el delito grave de distribuir sustancias controladas, que un abogado convicto por la mera posesión de tales sustancias. Íd. No es lo mismo ser convicto por la comisión de algún acto de fraude que ser convicto del delito grave de portar un arma de fuego cargada. *Morales Merced v. Tribunal Superior*, 93 D.P.R. 423 (1966). No es lo mismo ser convicto de asesinato o de tentativa de asesinato, *Rivera Pagán v. Supte. Policía de P.R.*, 135 D.P.R. 789 (1994), que haber cometido un acto de agresión, *In re Rodríguez*, 81 D.P.R. 638 (1959). Los requisitos del debido proceso de ley son evidentemente distintos en una y otra situación. Cuando la conducta delictiva del abogado no implica depravación moral es menester darle una oportunidad para ser oído, porque pueden existir atenuantes que deben considerarse. En cambio, cuando la conducta delictiva grave implica depravación moral prevalece el interés público en mantener la integridad de los procesos judiciales, por lo que es menester actuar con prontitud como lo hemos

hecho siempre, una vez el abogado ha sido notificado de la querella en su contra y éste ha podido comparecer motu proprio, si desea hacer cualquier alegación que tenga.

Nuestro proceder consuetudinario, pues, ha sido correcto, al menos en los casos de abogados convictos de delitos graves que implican depravación moral, en los cuales *el interés público de profilaxis social es apremiante*. No hemos violado el debido proceso de ley al actuar con prontitud para suspender del ejercicio profesional al que por su propia conducta de depravación moral se descalificó para ello. En mi criterio el único error es el que una mayoría del Tribunal comete aquí, al cambiar súbitamente en este caso el trato que siempre había dado antes durante casi un siglo a abogados en la misma situación.

## II

Hay otra razón, aún más fundamental que las expresadas antes, por la cual disiento de lo dispuesto por la Mayoría en el caso de autos.

Reiteradamente se ha resuelto que el debido proceso de ley no tiene un contenido fijo independiente de la situación particular. Es decir, que su contenido es siempre *circunstancial*. *Gilbert v. Homar*, 117 S.Ct. 1807, 520 U.S. 924 (1997); *Morrissey v. Brewer*, 408 U.S. 471 (1972); *Cafeteria Workers v. McElroy*, 367 US 886 (1961). Las circunstancias particulares del caso de autos claramente demuestran que no es procedente lo dispuesto por la Mayoría aquí. No hay exigencia alguna de debido proceso de ley que justifique *en este caso* el proceder de la Mayoría. Veamos.

El Lcdo. Luis E. Dubón Otero fue admitido al ejercicio de la abogacía y el notariado en octubre de 1960.

Hace más de un año, el 11 de febrero de 2000, luego de celebrársele el juicio correspondiente en el Tribunal de Distrito Federal de Puerto Rico, un Jurado encontró a Dubón Otero culpable de la comisión del delito grave de conspira-

ción para defraudar a Estados Unidos ("Conspiracy to commit offense or defraud United States") 18 U.S.C. sec. 371. Se trata de un delito grave que implica depravación moral.[2]

Tres meses más tarde, el 19 de mayo de 2000, luego de haber sido encontrado culpable del delito grave referido, pero antes de que se le dictara sentencia, *Dubón Otero comparecíó ante nos y solicitó que se le permitiera darse de baja de la profesión de abogado y notario de Puerto Rico.* Adujo entonces que luego de cuarenta años de practicar activamente la profesión, interesaba dedicarse a otros menesteres. Nos informó categóricamente que *no habría de ejercer más como abogado o notario*; y que deseaba darse de baja oficialmente de la profesión *"sin intención de solicitar reingreso"*. Incluso entregó toda su obra notarial al archivo notarial, renunciando así, de hecho, a su desempeño futuro como notario. No obstante lo anterior, el 9 de junio de 2000 denegamos su solicitud de darse de baja del ejercicio de la profesión, por razón de lo resuelto en *In re Ramírez de Arellano*, 142 D.P.R. 190 (1996).

El 24 de julio de 2000, en virtud del cargo de delito grave por el cual había sido convicto cinco meses y medio antes, el Tribunal de Distrito Federal para el Distrito de Puerto Rico le impuso a Dubón Otero una sentencia de sesenta (60) meses de prisión, una multa de $125,000 y una orden de restitución al Gobierno federal de la cantidad de $1,559,828.

El 7 de diciembre de 2000, pasados ya más de cuatro meses desde que se dictara la sentencia referida, al fin

---

[2] Reiteradamente hemos resuelto que tratándose de abogados, la depravación moral consiste en hacer algo contrario a la justicia, a la honradez, a los buenos principios o a la moral. *In re Colón Muñoz*, 149 D.P.R. 627 (1999); *In re Ríos Ruiz*, 129 D.P.R. 666 (1991); *In re Boscio Monllor*, 116 D.P.R. 692 (1985); *Morales Merced v. Tribunal Superior*, 93 D.P.R. 423 (1966).

Es evidente que el delito por el cual Dubón Otero fue encontrado culpable, es contrario a la honradez, a la moral y a los buenos principios, por lo que constituye depravación moral.

compareció ante nos el Procurador General de Puerto Rico y presentó contra Dubón Otero la querella correspondiente para casos de abogados convictos de delitos graves que implican depravación moral.

A la fecha de hoy, transcurridos ya más de cuatro meses desde que el Procurador General le notificó formalmente a Dubón Otero la referida querella en contra suya, *éste no ha comparecido ante nos. Es evidente que no tiene alegación o solicitud alguna que presentar ante este Foro. Ello es consistente con la solicitud que nos formuló el 19 de mayo de 2000, mediante la cual nos informó de su decisión de no ejercer más la profesión de abogado y notario en Puerto Rico. Es consistente, además, con su decisión de entregar su obra notarial, cosa que hizo hace ya varios meses.*

De todo lo anterior es evidente que no hay exigencia del debido proceso de ley alguna que requiera que este Tribunal le conceda al querellado una oportunidad de ser oído *que dicho querellado no interesa.* Ni la más dilatada concepción del debido proceso de ley exige tal cosa. Véase *Committee on Legal Ethics v. Boettner*, 394 S.E.2d 735 (1990). Indudablemente, si el querellado tuviese *factores mitigantes* que alegar ante nos para solicitar que no se le suspenda indefinidamente,(³) sin dudas lo hubiese hecho ya en algún momento durante los *14 meses que han transcurrido desde que fue convicto.* Pero el querellado no ha hecho tal cosa. Más bien, su única comparecencia ante nos ha sido para indicarnos que no le interesa continuar ejerciendo la profesión. *¿Por qué entonces insiste una mayoría de este Foro en concederle unas prerrogativas que el querellado no ha pedido y que son contrarias a su propio deseo de no ejercer más la profesión? ¿De dónde surge tal noción del debido proceso de ley que nunca antes se había reconocido?*

---

(³) En tal caso, claro está, sería menester considerar a la vez la posición del Ministerio Público, a los fines de examinar si hay factores *agravantes*.

## III

Luego de haberse considerado el caso de autos por el Tribunal, y en lo que se esperaba a que se redactase esta opinión disidente, el Procurador General de Puerto Rico presentó ante nos dos querellas contra otros abogados convictos de delitos graves que implican depravación moral. En una de las querellas el Procurador General pedía el desaforo de una abogada convicta por *falsificar sentencias y otros documentos judiciales*.(⁴) En la otra querella, el Procurador General pedía el desaforo de otra abogada convicta de *cometer perjurio en un proceso judicial federal*.(⁵) En ambos casos, una mayoría de este Tribunal, en conformidad con el nuevo proceder acordado con respecto a Dubón Otero, le dio un *término* a las abogadas referidas para mostrar causa por la cual no debería suspendérseles *provisionalmente* del ejercicio profesional.

Estos dos casos recientes ilustran a cabalidad las consecuencias del grave error que ha cometido una mayoría del Tribunal respecto al asunto que aquí nos concierne. Ahora, por el nuevo proceder decretado por una mayoría del Tribunal en el caso de Dubón Otero, quedan libres para continuar ejerciendo la profesión durante varias semanas o meses incluso abogados convictos *por atentar crasamente contra la integridad judicial*. Con raíz en el dictamen en el caso de autos, una mayoría de este Tribunal ahora permite que unos convictos por falsificar documentos judiciales y por mentir en procesos judiciales, puedan continuar ejerciendo como funcionarios de los tribunales durante semanas o meses, en lo que se dilucidan los supuestos factores mitigantes que puedan tener con respecto a una conducta criminal que inherentemente denigra el ejercicio

---

(⁴) *In re Wanda Viera Pérez*, TS-10253, de 23 de febrero de 2001.

(⁵) *In re Lourdes Colón*, Caso Núm. TS-10464, Resolución de 30 de marzo de 2001.

profesional. *¿De dónde ha salido esta noción tan distorsionada del debido proceso de ley?*

## IV

Ha transcurrido ya más de un año desde la fecha en que el querellado fue convicto. No deben continuar las dilaciones para realizar lo que en Derecho hace tiempo debió haber ocurrido. No puede este Tribunal otorgar privilegios a un abogado convicto por delito grave que implica depravación moral, que le hemos negado a tantos otros abogados en iguales circunstancias, sobre todo cuando ni el propio querellado lo ha solicitado.

Habiéndose presentado copia certificada de la sentencia condenatoria dictada por el foro federal, y luego del examen del expediente de dicho caso, lo que en Derecho procede es que se decrete ya la separación indefinida del Lcdo. Luis E. Dubón Otero del ejercicio de la profesión y se ordene que se borre su nombre del Registro de Abogados. Como la Mayoría dispone otro curso de acción, disiento.

— O —

Voto particular de conformidad emitido por el Juez Asociado Señor Rebollo López, al cual se une el Juez Asociado Señor Hernández Denton.

El temor de que se nos tache de inconsistentes no debe impedir que reconsideremos la opinión emitida en este caso el pasado 20 de noviembre. *Persistir en el error para realzar la consistencia de lo decidido constituiría una abdicación del deber que tenemos, como tribunal apelativo, de impartir justicia y de pautar el derecho.* Es por ello que abordamos nuevamente la controversia cuya solución hemos intentado en dos opiniones anteriores. (Énfasis suplido.) *Reyes Coreano v. Director Ejecutivo*, 110 D.P.R. 40 (1980).

Esas sabias palabras —y actitud— son las que, a nuestro juicio, deben regir la solución de la controversia hoy

ante nuestra consideración: esto es, si procede, o no, que decretemos el *desaforo automático y permanente* de un abogado que es convicto de la comisión de un delito grave, *aun cuando dicha convicción no es final y firme*, o, por el contrario, si meramente debemos *separarlo provisionalmente* del ejercicio de la profesión *hasta tanto su convicción por un delito grave advenga final y firme.*

Es correcto que en el pasado hemos decretado el desaforo permanente, de manera automática, del abogado convicto de delito grave. Nuestra determinación, y criterio, a esos efectos se debió, *de manera principalísima*, al hecho de que entendíamos que resultaba *totalmente inaceptable* permitir que un miembro de la profesión, que había sido convicto de delito grave, *continuara practicando y postulando ante los tribunales de nuestro País como si nada hubiera pasado mientras se dilucidaba la apelación por él interpuesta.* Ello, a juicio del Tribunal, constituyó *justificación suficiente* para rechazar la postura de que debía esperarse a que la convicción o sentencia se convirtiera en final y firme.

Como certeramente se señala en la excelente Opinión de conformidad suscrita por el compañero Juez Asociado señor Rivera Pérez, la mayoría de las jurisdicciones estatales norteamericanas, en las cuales imperaba una norma parecida a la nuestra, han abandonado esta posición y, en lugar de la misma, han adoptado una *norma intermedia* que es menos drástica, *aun cuando la misma tiene el mismo efecto, esto es, el de evitar que éste abogado continúe postulando.* Ello se logra *suspendiendo provisionalmente* del ejercicio de la profesión, al abogado convicto de delito grave, *hasta que* su convicción sea final y firme, *momento en el cual se decreta su desaforo permanente.*

Dicha norma —la cual es tan sabia y sencilla que nos llama poderosamente la atención el hecho de que no se nos hubiera ocurrido antes a los integrantes de este Tribunal— *evita*, repetimos, que el abogado convicto continúe practi-

cando la profesión. Por otro lado, tiene el *efecto positivo* de evitar que el abogado sufra la *denigrante sanción* del desaforo con anterioridad al momento en que su convicción se convierte en final y firme. En otras palabras, esta norma puede evitar la comisión de una injusticia contra dicho abogado, ello en la situación en que la convicción sea revocada, y dejada sin efecto, por el tribunal apelativo.

En el caso *hoy* ante nuestra consideración, existe un *elemento importante adicional* en abono a la posición propuesta por el Juez Rivera Pérez. El Tribunal Federal de Apelaciones de Estados Unidos para el Primer Circuito le ha concedido *fianza en apelación* al abogado Luis Dubón Otero. *No* sabemos si su convicción será, o no, revocada. *Sí sabemos, sin embargo, por experiencia propia que un tribunal apelativo no concede, de ordinario, fianza en apelación a menos que entienda que los errores señalados en apelación son altamente meritorios y que existe, al menos, una gran posibilidad de que la convicción sea revocada.*

En otras palabras, si algún caso es el indicado para que reconozcamos el error que hemos cometido en el pasado lo es el caso hoy ante nuestra consideración. *Nunca es tarde para reconocer nuestros errores, corregir los mismos y para hacer cumplida justicia.*

— O —

Voto particular de conformidad del Juez Asociado Señor Rivera Pérez.

La Sec. 9 de la Ley de 11 de marzo de 1909 (4 L.P.R.A. sec. 735) dispone lo siguiente:

El abogado que fuere culpable de engaño, conducta inmoral (*malpractice*), delito grave (*felony*) o delito menos grave (*misdemeanor*), en conexión con el ejercicio de su profesión o que fuere culpable de cualquier delito que implicare depravación moral, podrá ser suspendido o destituido de su profesión por la Tribunal Supremo de Puerto Rico. La persona que siendo abogado

fuere convicta de un delito grave cometido en conexión con la práctica de su profesión o que implique depravación moral, cesará convicta que fuere, de ser abogado o de ser competente para la práctica de su profesión. A la presentación de una copia certificada de la sentencia dictada al Tribunal Supremo, el nombre de la persona convicta será borrado, por orden del Tribunal, del registro de abogados. Al ser revocada dicha sentencia, o mediante el perdón del Presidente de los Estados Unidos o del Gobernador de Puerto Rico, el Tribunal Supremo estará facultado para dejar sin efecto o modificar la orden de suspensión.

La precitada disposición legal pretende facultar a este Tribunal para la separación *inmediata* (automática), en forma indefinida, de un abogado encontrado culpable de delito grave o menos grave, que esté relacionado con la práctica de la profesión o que constituya depravación moral. Sobre este particular, es preciso mencionar que, aun cuando un abogado haya sido declarado no culpable o exonerado de cargos criminales que, a su vez, constituyen conducta impropia, este Foro tiene autoridad para atender una querella, iniciar un proceso disciplinario y sancionar el proceder de dicho letrado.[1]

Amparándose en la Sec. 9 de la Ley de 11 de marzo de 1909, *supra,* y actuando a base de la mera presentación de una copia certificada de la sentencia condenatoria, en el pasado este Tribunal ha desaforado de forma inmediata (automática) e indefinidamente a letrados convictos de delitos graves y menos graves que implican depravación moral o que están relacionados con la práctica de la abogacía.[2] *No obstante, la utilización de tal procedimiento*

---

[1] *In re Soto López,* 135 D.P.R. 642, 645 (1994); *In re Franco Soto,* 115 D.P.R. 740, 752 (1984).

[2] *In re Colón Muñoz,* 149 D.P.R. 627 (1999); *In re Castrillón Ramírez,* 149 D.P.R. 88 (1999); *In re García Quintero,* 138 D.P.R. 669 (1995); *In re Hernández Pérez,* 138 D.P.R. 791 (1995); *In re Medina Lugo,* 134 D.P.R. 373 (1993); *In re Farinacci García,* 133 D.P.R. 206 (1993); *In re Maldonado Rivera,* 133 D.P.R. 207 (1993); *In re Fuentes Fernández,* 133 D.P.R. 548 (1993); *In re Bonilla Martínez,* 132 D.P.R. 1038 (1993); *In re Rúa Cabrer,* 132 D.P.R. 431 (1992); *In re Ríos Ruiz,* 129 D.P.R. 666 (1991); *In re Benítez Echevarría,* 128 D.P.R. 176 (1991); *In re Caparrós Rivera,* 128 D.P.R. 205 (1991); *In re Santiago Casanova,* 122 D.P.R. 489 (1998); *In re Flores*

*en la imposición de esa medida disciplinaria, por parte de este Tribunal, no ha sido del todo consistente.* En algunos casos ni siquiera el abogado querellado fue notificado con copia de la querella.([3]) En otros casos, este Tribunal ha emitido una orden para que el letrado querellado mostrara causa por la cual no debía ser suspendido inmediata (automática) e indefinidamente.([4]) En otros procesos disciplinarios, ante la presentación de la querella correspondiente, este Foro pospuso su adjudicación final hasta que finalizara el procedimiento de apelación de la sentencia condenatoria.([5]) Sin embargo, en otros casos, este Tribunal ha ejercido la jurisdicción disciplinaria, independientemente de que el letrado querellado haya presentado un recurso de apelación de la sentencia emitida en el procedimiento criminal.([6])

El desaforo, como sanción *inmediata* (automática), constituye o proviene de una norma tradicional del *"common*

---

*Betancourt,* 119 D.P.R. 479 (1987); *In re Malavé Ortiz,* 119 D.P.R. 492 (1987); *In re Torres López,* 119 D.P.R. 55 (1987); *In re Zamot Pérez,* 119 D.P.R. 58 (1987); *In re Ortiz Gilot,* 117 D.P.R. 167 (1986); *In re Boscio Monllor,* 116 D.P.R. 692, 697 (1985); *In re Sánchez Gómez,* 115 D.P.R. 74 (1984); *In re Núñez López,* 115 D.P.R. 702 (1984); *In re Varona Pacheco,* 71 D.P.R. 411 (1950), entre otros.

([3]) *In re Santiago Casanova,* supra; *In re Pérez Reilly,* 120 D.P.R. 517 (1988); *In re Torres López,* supra; *In re Malavé Ortiz,* supra.

([4]) Por ejemplo, en *In re Manzano Velázquez,* 144 D.P.R. 84 (1997), el licenciado Manzano Velázquez hizo alegación de culpabilidad por siete (7) cargos de desacato criminal y este Tribunal le concedió término para que mostrara causa; en *In re Marrero Luna,* 140 D.P.R. 217 (1996), el abogado querellado hizo alegación de culpabilidad por dos (2) cargos de omisión en el cumplimiento del deber como funcionario o empleado publico, Art. 214 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4365, y tres (3) cargos por infracción a la Sec. 145 de la Ley de Contribuciones sobre Ingresos —dejar de rendir planillas y pagar contribución— 13 L.P.R.A. ant. sec. 3145A, todos delitos menos graves, sin embargo, este Tribunal le concedió término para que se expresara en torno a la querella; en *In re Rojas Jiménez,* 134 D.P.R. 732 (1993), el letrado fue convicto por recibo de bienes apropiados y por falsificación de documentos, no obstante, este Tribunal pospuso la querella hasta que finalizara el procedimiento apelativo de las sentencias condenatorias; en *In re Bobet Ruiz,* 132 D.P.R. 881 (1993), se le concedió una orden para mostrar causa al abogado querellado convicto por el delito de resistencia u obstrucción a la autoridad pública, Art. 258 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4493; en *In re Malavet Rodríguez,* 115 D.P.R. 680 (1984), *este Tribunal emitió una orden para mostrar causa al abogado querellado, luego de que su convicción fue confirmada por el Tribunal de Circuito de Apelaciones de Estados Unidos para el Primer Circuito.*

([5]) *In re Rojas Jiménez,* supra; *In re Malavet Rodríguez,* supra.

([6]) *In re Boscio Monllor,* supra, pág. 700.

*law"* —de *escasa adopción* en la jurisdicción estatal norte-americana—([7]) prevaleciente, *únicamente*, en Nueva York, en Mississippi y en el Distrito de Columbia [y Puerto Rico].([8]) Los modelos de reglas del American Bar Association han *descartado* el desaforo como sanción inmediata (automática) e indefinida en casos como el presente.([9]) Ante una convicción por delito grave, muchos estados han incorporado diversas medidas, tales como: una probatoria, una suspensión provisional o una consideración de caso a caso.([10])

El desaforo inmediato (automático) ha generado un gran debate en la profesión legal, respecto a si tal medida viola el debido proceso de ley de un abogado convicto por un delito grave.([11]) Sobre este particular, entendemos que en efecto la suspensión del ejercicio de la abogacía, sin salvaguardar el derecho del letrado a ser escuchado, y sin la celebración de una vista, viola el derecho constitucional a un debido proceso de ley.

Los defensores del desaforo inmediato (automático), sostienen que es un mecanismo disciplinario que protege al público, a las instituciones, al sistema jurídico y la integridad de la profesión legal, de abogados que no poseen el carácter moral adecuado y la aptitud idónea para el ejercicio de tan delicada profesión.([12])

Por otro lado, quienes se oponen a tan drástica medida

---

([7]) Sobre este particular, Rachna K. Dhanda comenta lo siguiente:

*"Despite the harsh tones of the common law rule, there is little evidence that the rule of automatic disbarment has been strongly enforced by many states, and only a few states continue to follow the rule."* (Énfasis suplido.) R.K. Dhanda, *When Attorneys Become Convicted Felons: The Question of Discipline by the Bar,* 8 Geo. J. Legal Ethics 723, 725 (1995).

([8]) Dhanda, *supra,* pág. 731, esc. 53.

([9]) El *ABA Special Committee on Evaluation of Discipline Enforcement,* mejor conocido como el *Clark Committee,* en vez de recomendar, el desaforo automático en caso de abogados convictos de delito, ha recomendado la suspensión provisional. Dhanda, *supra,* págs. 732–733.

([10]) Dhanda, *supra,* págs. 723–724.

([11]) Dhanda, *supra,* pág. 724.

([12]) Dhanda, *supra,* pág. 731.

disciplinaria, de *inmediata* (automática) *imposición*, plantean consideraciones de debido proceso de ley, como su principal argumento. Sobre este particular, Abraham Abramovsky señala lo siguiente:

> [A]*utomatic disbarment deprives an attorney of due process, violates his Fifth Amendment rights, impinges his right to equal protection of the law and, in essence, takes away his livelihood and reputation without affording him a meaningful forum or realistic opportunity to be heard.* The drastic remedy of disbarment should result only after a thorough and meaningful hearing, at which the allegedly unethical attorney has a meaningful opportunity to present substantial mitigating factors that might negate or reasonably explain the felonious aspect of his conduct. *In summary, the issue is not whether an attorney should be disbarred because of a felonious act, but whether such a drastic punishment should be administered automatically.* (Énfasis suplido.) A. Abramovsky, *A Case Against Automatic Disbarment*, 13 Hastings Const. L.Q. 415, 417 (1986).

La cláusula de debido proceso de ley,[13] en su vertiente procesal, le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y de propiedad del individuo se haga a través de un procedimiento que en esencia sea justo y equitativo.[14] El debido proceso de ley, en lo que concierne a lo procesal, no es un molde riguroso que se da en el abstracto, pues su naturaleza es eminentemente circunstancial y pragmática, no dogmática.[15] La validez de un planteamiento de inconstitucionalidad por falta de un debido proceso no debe ser una mera alegación basada en generalidades.[16] Cada caso exige una evaluación concienzuda de las circunstancias

---

[13] La Sec. 7 del Art. II de la Constitución de Puerto Rico, L.P.R.A., Tomo 1, ed. 1999, pág. 280, dispone, en lo aquí pertinente, como sigue: "Ninguna persona será privada de su libertad o propiedad sin debido proceso de ley, ni se negará a persona alguna en Puerto Rico la igual protección de las leyes." En similar forma prescriben las Enmiendas V y XIV de la Constitución de Estados Unidos.

[14] *Rivera y otros v. Bco. Popular*, 152 D.P.R. 140 (2000); *P.A.C. v. E.L.A. I*, 150 D.P.R. 359, 376 (2000).

[15] *P.A.C. v. E.L.A. I*, supra, pág. 376; *Fac. C. Soc. Aplicadas, Inc. v. C.E.S.*, 133 D.P.R. 521, 542 (1993).

[16] *Fac. C. Soc. Aplicadas, Inc. v. C.E.S.*, supra, pág. 542.

involucradas.([17]) Para que entre en vigor la protección que ofrece el debido proceso de ley, tiene que estar en juego un interés individual de libertad o propiedad.([18])

Una vez se cumpla esta exigencia, corresponde determinar cuál es el procedimiento exigido (*what process is due*).([19]) Tal determinación requiere el análisis de los siguientes factores: (1) los intereses individuales afectados por la acción oficial; (2) el riesgo de una determinación errónea que prive a la persona del interés protegido mediante el proceso utilizado y el valor probable de garantías adicionales o distintas, y (3) el interés gubernamental protegido con la acción sumaria y la posibilidad de usar métodos alternos.([20]) Dependiendo de las circunstancias, diversas situaciones pueden requerir variaciones en el tipo de procedimiento, pero siempre persiste el requisito general de que el proceso gubernamental debe ser justo e imparcial.([21]) El derecho constitucional a un debido proceso de ley no implica que el querellado pueda atacar colateralmente su convicción, pero sí permitirle establecer cualquier factor o circunstancia que él considere como eximente de una medida disciplinaria como abogado o que constituya un atenuante o que pueda considerarse como mitigante al momento de que el tribunal decida imponerle una sanción.([22])

---

([17]) *P.A.C. v. E.L.A. I*, supra, pág. 376.

([18]) *P.A.C. v. E.L.A. I*, supra, pág. 376; *Rodríguez Rodríguez v. E.L.A.*, 130 D.P.R. 562, 578 (1992).

([19]) *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, 133 D.P.R. 881, 888 (1993); *Rodríguez Rodríguez v. E.L.A.*, supra, pág. 578; *Rivera Santiago v. Srio. de Hacienda*, 119 D.P.R. 265, 274 (1987).

([20]) *P.A.C. v. E.L.A. I*, supra, pág. 376; *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, supra, pág. 888; *Matthews v. Elridge*, 424 U.S. 319 (1986).

([21]) *P.A.C. v. E.L.A. I*, supra, pág. 376.

([22]) *In re Ruffalo*, 390 U.S. 544, 551 (1968), reconsideración denegada, 391 U.S. 961 (1968). Véase, además, *Committee on Legal Ethics v. Boettner*, 394 S.E.2d 735, 738–739 (1990), que sobre este particular se pronunció lo siguiente:

" 'Where there has been a final criminal conviction, proof on the record of such conviction satisfies the Committee on Legal Ethics' burden of proving an ethical violation arising from such conviction.'

En relación con la situación ante nuestra consideración, el Tribunal Supremo de Estados Unidos ha determinado que las licencias ocupacionales o profesionales constituyen un interés propietario.[23] Desde el año 1866, el más alto foro judicial federal ha establecido que los abogados sólo pueden ser privados de su licencia para el ejercicio de la abogacía, luego de brindarles una oportunidad para ser escuchados.[24] Ronald Rotunda y John Nowak, al citar a *In re Ruffalo*, 390 U.S. 544 (1968), comentan que las licencias ocupacionales o profesionales constituyen un interés propietario a quien se les emite. A esos efectos expresan:

> Government licenses are also a *form of property* insofar as *they constitute an entitlement to engage in a valuable activity.* Thus the government *must have a fair procedure to determine whether* driver's licenses or *occupational licenses should be revoked.* (Énfasis suplido y escolios omitidos.) 2 *Rotunda y Nowak, Treatise on Constitutional Law: Substance and Procedure* Sec. 17.5, pág. 634 (1992).

Precisa señalar, que el Tribunal Supremo de Estados Unidos ha expresado que *las acciones disciplinarias constituyen procedimientos adversativos de naturaleza*

---

"From a procedural due process standpoint, we believe that the respondent should be able to make an evidentiary record to show mitigating factors bearing on the disciplinary sentence.

"There is general agreement that a license to practice law is a valuable right, such that its withdrawal must be accompanied by appropriate due process procedures. Several courts have determined that where annulment of an attorney's license is sought based on a felony conviction under a provision similar to Article VI, Section 23 of the Bar By-Laws, due process requires the right to request an evidentiary hearing. The purpose of such a hearing is not to attack the conviction collaterally, but to introduce mitigating factors which may bear on the disciplinary punishment to be imposed." (Énfasis suplido y citas omitidas.)

[23] In re Ruffalo, *supra*.

[24] *Ex parte Garland*, 71 U.S. 333, 378 (1866):

"The order of admission is the judgment of the court that the parties possess the requisite qualifications as attorneys and counsellors, and are entitled to appear as such and conduct causes therein. From its entry the parties become officers of the court, and are responsible to it for professional misconduct. *They hold their office during good behavior, and can only be deprived of it for misconduct ascertained and declared by the judgment of the court after opportunity to be heard has been afforded.*" (Énfasis suplido.)

*cuasicriminal.*([25]) Además, ha dictaminado que un abogado, sujeto al procedimiento disciplinario de desaforo, tiene derecho a un debido proceso, que incluye una adecuada notificación de la conducta impropia que se le imputa antes de que comience el referido procedimiento.([26]) Sobre este particular, Samuel T. Reaves comenta lo siguiente:

> *Ruffalo specifies that an attorney has a right, in a disciplinary matter, to an opportunity for explanation and defense of the charges.* Though this opportunity for explanation and defense has been interpreted by some courts not to entail a formal or public hearing and not to encompass the right to make an oral presentation to the actual person or entity responsible for deciding the case, the general trend is for most states to provide in their codes, constitutions, rules, or interpretative cases that an attorney shall be given a hearing if he or she requests one. *Therefore, not suprisingly [sic] a number of cases finding procedural due process violations in disciplinary matters are based on the fact that no hearing or opportunity to be heard was provided the attorney.* (Énfasis suplido.) S.T. Reaves, *Procedural Due Process Violations in Bar Disciplinary Proceedings*, 22 J. Legal Prof. 351, 357 (1998).

El Tribunal Supremo de Estados Unidos expresó en *Theard v. United States*, 354 U.S. 278, 282 (1957), que:

> Disbarment being the very serious business that it is, ample opportunity must be afforded to show cause why an accused practitioner should not be disbarred.

---

([25]) *In re Ruffalo*, supra. Véase, además, *Matter of Williams*, 464 A.2d 115, 118–119 (1983), en el que el Tribunal expresó lo siguiente:

"*It is well settled that disciplinary proceedings are quasi-criminal in nature and that an attorney who is the subject of such proceedings is entitled to procedural due process safeguards.*" (Énfasis suplido.)

([26]) *In re Ruffalo*, supra. Véase, además, W. Brewer Jr., *Due Process in Lawyer Disciplinary Cases: From the Cradle to the Grave*, 42 S.C. L. Rev. 925, 928 (1991). Precisa señalar el siguiente comentario de Samuel T. Reaves:

"As part of the guarantee of procedural due process, the U.S. Supreme Court has recognized an attorney in a disciplinary matter is entitled to fair notice of the charge against him or her. Because the United States Supreme Court articulated this right, adequate notice is one of the few procedural due process components universally recognized among the states in attorney disciplinary matters. *Not surprisingly, the overwhelming majority cases in which a deprivation of due process is found are based on the insufficient provision of notice of the underlying charges.*" (Énfasis suplido.) Samuel T. Reaves, *Procedural Due Process Violations in Bar Disciplinary Proceedings*, 22 J. Legal Prof. 351, 352 (1998).

Por otro lado, añade sobre el tema Abraham Abramovsky lo siguiente:

> The United States Supreme Court has consistently held that legal disciplinary actions "are adversary proceedings of a quasi-criminal nature." Accordingly, the Court has concluded that "[d]isbarment, designed to protect the public, is a punishment or penalty imposed on the lawyer." *Due to the fact that disciplinary proceedings are deemed to be quasi-criminal in nature, it is "only fair and just that the Government not subject any person to such a drastic divestment [of his livelihood] without affording him substantial due process of law"*. (Énfasis suplido, citas omitidas y corchetes en el original.) Abramovsky, *supra*, pág. 419.

El Tribunal Supremo de Louisiana ha expresado que la licencia para el ejercicio de la abogacía es un derecho protegido constitucionalmente, el cual no debe suspenderse sin las garantías de un debido proceso de ley.[27] A tales efectos, dicho tribunal expresó lo siguiente:

> The right to practice law (implemented through a license) is a constitutionally protected right and no attorney can be deprived of this right by a suspension or otherwise without strict adherence to basic constitutional principles of procedural due process. Where there are issues of adjudicative fact involved, that is, facts relating to the particular individual, basic procedural due process requires that the individual be afforded the opportunity to be heard at a formal hearing prior to any curtailment of his right.

. . . . . . . .

---

[27] Existen otros tribunales que han reafirmado los pronunciamientos de *In re Ruffalo*, supra. Por ejemplo, el Tribunal de Apelaciones para el Octavo Circuito en *In re Jones*, 506 F.2d 527, 528–529 (8vo Cir. 1974), determinó:

"It is elementary that a fundamental requirement of due process is notice that apprises the interested parties of the pendency of the action and affords them an opportunity to present their objections. The same principle applies to disbarment proceedings. Rule 1(f) does not provide for any notice and is, therefore, deficient. Of course, disbarment may be premised upon a felony conviction, and it may appear superfluous to require notice in such circumstances, especially where the conviction was had in the same court or before the same judge; nevertheless, questions of identity, finality, mitigation and the like may be foreclosed by summary action. *Due process, therefore, requires the issuance of a show cause order or similar notice affording the accused the right to appear and be heard.* (Énfasis suplido y citas omitidas.)

> We hold that the Articles of the Louisiana State Bar Association (Art. 15, Section 8), insofar as they allow the suspension of an attorney from the practice of law because of his conviction of a 'serious crime' without affording him a prior hearing on the issue are in violation of the due process provisions of the United States Constitution and *Art. I, Section 2* of the Louisiana Const. of 1921. (Citas omitidas.) *Louisiana State Bar Association v. Ehmig*, 277 So. 2d 137, 139–140 (1973).

A tenor de lo precedente, concluimos que la licencia para el ejercicio de la abogacía en Puerto Rico constituye un interés propietario del letrado, que lo hace acreedor de las garantías procesales bajo las cláusulas de debido proceso de ley de la Constitución de Estados Unidos y de Puerto Rico. En el presente caso, los factores que deben considerarse bajo el análisis constitucional del debido proceso de ley son claros. Primeramente, el desaforo inmediato (automático), conforme la Sec. 9 de la Ley de 11 de marzo de 1909, *supra*, afecta un interés propietario (licencia para el ejercicio de la abogacía) sin la previa concesión al querellado de una oportunidad de ser notificado de la querella y de ser escuchado en el contorno de un proceso justo y objetivo. En dicho proceso se podría ponderar sobre elementos apremiantes en una acción disciplinaria, tales como: el carácter, la salud mental, la reputación del querellado, las circunstancias atenuantes o mitigantes, y la relación del delito con la práctica de la profesión, entre otros.

En virtud de lo anterior, el riesgo de un prematuro desaforo inmediato (automático) es inminente, por ejemplo: cuando no se toman en consideración los factores antes aludidos, o cuando el desaforo recae en la persona equivocada, o cuando la sentencia condenatoria es posteriormente revocada, porque el Ministerio Público no haya probado la culpabilidad del letrado, entre otros factores que redundarían en que el desaforo inmediato (automático) podría constituir una determinación injusta o hasta errónea. Si bien es cierto que la finalidad del desaforo inmediato (automático) es la protección del público, *no es menos cierto*

*que existen otros mecanismos alternos en consecución de ese propósito, como la suspensión provisional, la cual discutiremos más adelante.*

El proveer la garantía a un debido proceso de ley al abogado sujeto a una acción disciplinaria, es una protección constitucional esencial. Más aún, si tomamos en consideración que el ejercicio de jurisdicción disciplinaria por un tribunal puede repercutir en la carrera profesional y en la reputación de dichos letrados.[28]

En Puerto Rico la Sec. 9 de la Ley de 11 de marzo de 1909, *supra*, permite el desaforo inmediato (automático) de abogados querellados, convictos de delito, sin proveerles un procedimiento disciplinario que les garantice su derecho constitucional a un debido proceso. En esos casos, la convicción y la separación inmediata (automática) del abogado han sido previstas para ocurrir en forma simultánea. Un abogado convicto por delito grave no tiene reconocido en ese estatuto una oportunidad real de ser notificado de la querella y de ser escuchado para presentar factores atenuantes, demostrar su arrepentimiento, las circunstancias que dieron lugar a la comisión del delito, su reputación, el carácter, la salud mental, la inexistencia de relación entre el delito por el cual fue convicto y su capacidad y aptitud para ejercer la abogacía, entre otras.

Existen medidas interlocutorias provisionales o de carácter permanente que podría adoptar este Tribunal, en el ejercicio de su poder inherente y de su jurisdicción disciplinaria. Sin embargo, opinamos que siempre debe salvaguardarse el debido proceso de ley de los abogados sujetos a ésta, independientemente de que la razón de tal proceso sea su convicción por un delito.

En casos como el presente, este Tribunal podría considerar el imponer una suspensión provisional hasta tanto la sentencia advenga final y firme; medida que estaría a tono con la protección inmediata del público, del sistema jurí-

---

[28] Véase Brewer, *supra*, pág. 941.

dico y de la integridad de la profesión legal. Un gran número de estados ha adoptado reglamentaciones que proveen para la imposición de una suspensión provisional, cuando un abogado resulta convicto de delito serio.[29]

A través de una suspensión provisional, este Tribunal concedería la merecida deferencia a los procedimientos criminales que se encuentren pendientes ante los tribunales, federales o estatales. De este modo, se esperaría a que el proceso de impartir justicia en primera instancia o a nivel apelativo concluya, que la sentencia de convicción advenga final y firme y el procedimiento disciplinario termine. En igual forma se protege, además, el interés público que comprende la confianza del público en la profesión legal y la integridad de la institución misma.

La celebración de una vista brindaría al querellado un proceso adecuado previo a la sanción final que este Tribunal entienda a bien imponer. Tal proceso le brindaría a este Foro la oportunidad de considerar factores agravantes y atenuantes, así como la naturaleza del delito (sobre si en efecto el delito en cuestión, está o no relacionado con la práctica de la profesión o si éste constituye depravación moral), la seriedad del delito, la salud mental, la reputación y el carácter del querellado, las circunstancias particulares en que se produjo la comisión del delito, entre otros criterios que merecen una particular atención de parte de este Tribunal.[30]

---

[29] Dhanda, *supra*, pág. 733. El Clark Committee, ha preferido el término de delito serio en lugar del concepto de depravación moral. Dicha recomendación se basó en que el término de depravación moral es un concepto vago y discrecional, que ha provocado decisiones conflictivas e inconsistentes. Íd., págs. 726–727. Por otro lado, bajo el término de delito serio se consideran aquellos delitos graves o menos graves que están manifiestamente relacionados con la honestidad o aptitud del abogado para ejercer la práctica de la abogacía. Íd., pág. 726.

[30] El Estándar 3.0, de los *Standards for Imposing Lawyer Sanctions* de la *American Bar Association* enumera varios factores que deben tomarse en consideración al imponer sanciones disciplinarias. El estándar 3.0, dispone lo siguiente:

"In imposing a sanction after a finding of lawyer misconduct, a court should consider the following factors:

"(a) the duty violated;

"(b) the lawyer's mental state; and

En resumen, la violación o no del debido proceso de ley que cobija a los abogados querellados, depende en gran medida de las disposiciones reglamentarias imperantes en cada jurisdicción. En un análisis de *In re Ruffalo*, supra, Samuel T. Reaves concluye lo siguiente:

[E]xactly what constitutes a procedural due process violation in a Bar disciplinary proceeding essentially depends on the rules of the controlling jurisdiction. *This is true in large part because the U.S. Supreme Court has handed down few specifics in terms of the contours of procedural due process in this context. Even with the high degree of variability among jurisdictions, a few conclusions may be drawn.* First, an attorney in a case of misconduct is always entitled to: (1) notice of the charges; (2) an opportunity to explain and defend against those charges; and (3) a neutral decision-maker. Second, an attorney in most jurisdictions is entitled to: (1) a formal hearing; (3)[sic] an opportunity to present evidence and to call and cross-examine witness; (4) a right to have counsel present; (5) a decision based on the record and a statement of reasons for that decision; (6) a right to have witnesses subpoenaed and to; (7) a right to purchase a transcript of the record of a proceeding; and (8) a burden of proof greater than a preponderance of the evidence. Finally, an attorney is generally not entitled to: (1) a hearing which is public; (2) a jury trial; (3) an appointed attorney; and (4) a free transcript. (Énfasis suplido.) Reaves, *supra*, pág. 363.

## I

Los estatutos promulgados por la Asamblea Legislativa de Puerto Rico se presumen constitucionales.[31] Por tanto, los tribunales deben considerar y resolver sobre la constitucionalidad de una ley sólo cuando ello sea indispensable para la determinación de la causa en sus méritos.[32] En virtud de ello, "[u]n estatuto es y se presume constitucional

---

"(c) the actual or potential injury caused by the lawyer's misconduct; and

"(d) the existence of aggravating or mitigating factors." ABA *Standards for Imposing Lawyer Sanctions* Sec. 3.0 (1986).

[31] *Caquías v. Asoc. Res. Mansiones Río Piedras*, 134 D.P.R. 181, 189 (1993); *Walker v. Tribunal de Contribuciones y Tesorero, Interventor*, 72 D.P.R. 698, 704 (1951); *Spanish Am. Tobacco Co. v. Buscaglia*, 71 D.P.R. 991, 993 (1950).

[32] *Spanish Am. Tobacco Co. v. Buscaglia*, supra, pág. 993.

hasta que resolvamos lo contrario".[33] *Cerame-Vivas v. Srio. de Salud*, 99 D.P.R. 45, 51 (1998).

De ordinario, cuando una ley resulta defectuosa por exclusión, este Tribunal tiene dos (2) remedios a su alcance, a saber: decretar la nulidad de la ley y negar sus beneficios a toda la clase legislativamente beneficiada, o extender los beneficios para incluir a los perjudicados por la exclusión.[34]

En relación con la segunda alternativa, este Tribunal ha expresado en *Milán Rodríguez v. Muñoz*, 110 D.P.R. 610, 618–619 (1981), lo siguiente:

> En materia de hermenéutica constitucional y ante estatutos que adolecen de inconstitucionalidad por sub-inclusión, se reconoce la facultad de los tribunales de extender los beneficios estatutarios a aquellos grupos o clases excluidos. La regla es consustancial con el principio de que el Poder Judicial —en abono de una deferencia hacia el Poder Legislativo— debe esforzarse por lograr interpretaciones congruentes y compatibles con el mantenimiento de la constitucionalidad de una ley. En su operación, a diferencia de éste, sin embargo, el impedimento constitucional podrá ser salvado, no mediante la interpretación del texto que por sus claros términos no es susceptible de serlo de otra manera, sino por la extensión de los beneficios a la clase excluida. (Énfasis suprimido y citas omitidas.)

Los pronunciamientos de este Tribunal, en torno al principio de hermenéutica constitucional, atienden específicamente la legislación que está vigente y es *mandatoria*. No obstante, la Sec. 9 de la Ley de 11 de marzo de 1909, *supra*, no constituye una disposición legislativa vinculante para este Foro; por el contrario, hemos expresado que leyes como la presente son meramente directivas.[35]

[33] *Misión Ind. P.R. v. J.P.*, 146 D.P.R. 64, 84 (1998).
[34] *P.R.P. v. E.L.A.*, 115 D.P.R. 631, 641–642 (1984).
[35] *In re Abella*, 67 D.P.R. 229, 238 (1947).

## II

Este Tribunal, en el ejercicio de su poder inherente, está facultado para reglamentar la profesión de abogado en nuestra jurisdicción,([36]) razón por la cual tiene la ineludible responsabilidad de instituir y mantener un orden jurídico íntegro y eficaz que goce de la completa confianza y apoyo de la ciudadanía.([37]) A tenor de esta facultad inherente de reglamentar la conducta de la profesión, hemos resuelto que los requisitos establecidos por la Legislatura mediante estatuto para regular la admisión de abogados al ejercicio de la profesión en Puerto Rico no nos limitan, y que dicha legislación es solo directiva y no mandatoria.([38])

Este Tribunal se ha pronunciado reiteradamente sobre su "facultad inherente para reglamentar la admisión y la *remoción* de una persona del ejercicio de la abogacía". (Énfasis suplido.) *In re Belén Trujillo*, 128 D.P.R. 949, 957 (1991). Por tanto, cualquier ley que se apruebe por la Asamblea Legislativa referente a la admisión y reglamentación al ejercicio de la profesión legal es puramente directiva, no mandatoria.([39]) A tales efectos, este Tribunal puede seguir el procedimiento que estime conveniente, siempre que esté en armonía con el debido proceso de ley.([40]) Si bien

---

([36]) *In re Soto López*, supra, pág. 646; *In re Benítez Echevarría*, págs. 176–177; (1991); *In re Rivera Medina*, 127 D.P.R. 600 (1990); *In re Berríos Pagán*, 126 D.P.R. 458, 459 (1990); *In re Concepción Velázquez*, 126 D.P.R. 474, 475 (1990); *In re Delgado*, 120 D.P.R. 518, 527 (1988); *In re Díaz Alonso, Jr.*, 115 D.P.R. 755, 760 (1984). En este último caso se invocó específicamente el poder inherente y *constitucional* de este Tribunal para reglamentar la profesión de la abogacía.

([37]) *Colegio de Abogados de P.R. v. Barney*, 109 D.P.R. 845, 847 (1980).

([38]) *López Santiago, ex parte*, 147 D.P.R. 909 (1999); *In re Abella*, supra, pág. 238; *In re Bosch*, 65 D.P.R. 248, 251 (1945); *In re González Blanes*, 65 D.P.R. 381, 391 (1945); *In re Pagán*, 71 D.P.R. 761, 763 (1950); *In re Liceaga*, 82 D.P.R. 252, 255 (1961).

([39]) *Colegio de Abogados de P.R. v. Schneider*, 112 D.P.R. 540, 546 (1982); *González v. Tribunal Superior*, 75 D.P.R. 585, 671 (1953); *In re Abella*, supra, pág. 238; *In re Bosch*, supra, pág. 251; *Ex parte Jiménez*, 55 D.P.R. 54, 55 (1939).

([40]) *In re Pagán*, supra, pág. 763.

es cierto que los tribunales han validado legislación aprobada para asistir su poder inherente, cuando ésta ha privado o menoscabado ese derecho inherente, los tribunales han anulado dicha legislación.(⁴¹)

Aun cuando en situaciones similares al presente caso, este Tribunal ha desaforado indefinidamente en forma inmediata (automática), en algunos casos, a abogados convictos por delitos graves y delitos menos graves que constituyen depravación moral o que están relacionados con la práctica de la abogacía, *ello no implica que debamos continuar imponiendo tan drástica medida, sin garantizar y salvaguardar los derechos constitucionales de los letrados involucrados.* En virtud del poder inherente de este Tribunal para reglamentar la admisión y *separación* del ejercicio de la abogacía, las disposiciones legislativas resultan ser *puramente directivas y no mandatorias.* No obstante, en un sano ejercicio de ese poder inherente del que estamos revestidos, podemos *atemperar* la norma estatutaria existente que permite el *desaforo automático prematuro* de un abogado en forma indefinida, en aras de salvaguardar y proteger su derecho constitucional a un debido proceso de ley.

De este modo, no estaríamos enfrentándonos a un prematuro desaforo automático, cuando es revocada una sentencia condenatoria,(⁴²) cuando el desaforo original es pronunciado contra una persona equivocada,(⁴³) o enajenando

---

(⁴¹) *In re González Blanes,* supra, pág. 391.

(⁴²) Es menester recordar lo que sucedió en *In re Elías Rivera,* 122 D.P.R. 633 (1988). En dicho caso, este Tribunal desaforó inmediatamente al licenciado Elías Rivera, quien había resultado convicto por un delito grave cometido en conexión con la práctica de la profesión. No obstante, el Tribunal Federal de Apelaciones para el Primer Circuito revocó la convicción, expresando que la prueba presentada por el Gobierno de Estados Unidos no demostró que el referido licenciado se hubiere apropiado ilegalmente de propiedad de otras personas. Dicho tribunal concluyó que, el referido licenciado nunca debió haber sido acusado. En virtud de lo anterior, este Tribunal permitió la reinstalación del letrado. No obstante, la consecuencia de ese prematuro desaforo automático nunca podrá borrarse. Esa medida disciplinaria mancilló la reputación y el futuro profesional de un abogado que nunca debió ser acusado.

(⁴³) In re *Boscio Monllor,* supra.

el proceso disciplinario de los factores o consideraciones antes indicados. Es fundamental que este Tribunal emita una orden a nuestra Secretaria para que expida inmediatamente mandamiento dirigido al querellado para que conteste la querella presentada dentro de un término razonable.[44] Además, en protección del interés público y la integridad de la profesión legal, se debe emitir una orden para que el querellado muestre causa por la cual no deba ser suspendido provisionalmente de la profesión de abogado, hasta que concluya el trámite de justicia apelativa reclamado por éste ante el Tribunal de Apelaciones de Estados Unidos para el Primer Circuito, y el procedimiento disciplinario pendiente ante nos.[45]

---

[44] Véanse: Regla 14(f) de nuestro Reglamento, 4 L.P.R.A. Ap. XXI-A; Regla 50 de nuestro Reglamento, 4 L.P.R.A. Ap. XXI-A.

[45] Similar trato le impartimos al caso siguiente: *In re Wanda Viera Pérez*, TS-10253, de 23 febrero de 2001.